### In re MERGENTIME'S ESTATE.

(Supreme Court, Appellate Division, First Department. December 24, 1908.)

1. TAXATION (§ 876*)—TRANSFER TAX—"EDUCATIONAL CORPORATION."

The Metropolitan Museum of Art, incorporated by Laws 1870, p. 491, c. 197, "for the purpose of establishing and maintaining a museum and library of art, of encouraging and developing the study of fine arts, and the application of arts to manufacture and practical life, of advancing the general knowledge of kindred subjects, and to that end of furnishing popular instruction and recreation," and which, so far as appears, has consistently used the property given it solely for the purpose of encouraging and developing the study of the fine arts and advancing the general knowledge of kindred subjects, is an "educational corporation," within Tax Law (Laws 1896, p. 869, c. 908, as amended by Laws 1905, p. 829, c. 368) § 221, providing that any property devised or bequeathed to any educational corporation shall be exempt from the provisions of the act; the exemption not being confined to corporations exclusively incorporated for educational purposes.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

2. TAXATION (§ 204*)—STATUTES—CONSTRUCTION—EXEMPTIONS.

The rule that statutes of exemption from taxation must be strictly construed against one claiming it, and if the exemption is not plainly expressed it will not be presumed, applies where an exemption is claimed from the general burden of taxation common on all property or on the people generally, and where a tax imposed is not such a common burden, but a special tax, reaching only to special cases and affecting only a special class of persons, the rule is that to subject such a class of persons to the tax requires a clear legislative intention; and such qualification of the rule applies to the transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 322; Dec. Dig. § 204.*]

Houghton, J., dissenting.

---

Appeal from Surrogate's Court.

In the matter of the appraisal, under the act in relation to taxable transfers of·property, of the property of James Henry Mergentime, deceased. From an order assessing a legacy to the Metropolitan Museum of Art as subject to taxation, it appeals. Reversed.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, and CLARKE, JJ.

Robert W. De Forest, for appellant.

Thomas B. Casey, for respondent State Comptroller.

INGRAHAM, J. By the will of the testator there was left to the Metropolitan Museum of Art a legacy of $1,000, to be applied to the uses and purposes of its incorporation. The Metropolitan Museum of Art was incorporated by a special act of the Legislature (chapter 197, p. 491, Laws 1870) "for the purpose of establishing and maintaining in said city a museum and library of art, of encouraging and developing the study of the fine arts, and the application of arts to manufacture and practical life, of advancing the general knowledge of kindred subjects, and, to that end, of furnishing popular instruction and recreation." The corporation proceeded under this charter, and in the year 1878 entered into an agreement with the city of New York which recited that the commissioners of the department of public parks, under authority of the Legislature passed April 22, 1876, have erected a building on Central Park and have been authorized to enter into a contract with the Metropolitan Museum of Art to transfer thereto and establish and maintain therein its museum, library, and collections, and carrying out the objects and purposes of said corporation. It was then agreed that the city of New York let to the museum the said buildings and appurtenances thereto, to have and to hold the same as long as the museum should continue to carry out the objects and purpose defined in its charter, and to faithfully keep, perform, and observe the covenants and conditions contained in the agreement. The museum· was to preserve the buildings against fire or other damage or injury, and transfer to and place and arrange in said building its museum, library, and collections, or such portion thereof as can be properly displayed to the public therein; that on four days of each week and all public holidays, except Sunday, the exhibition halls should be kept open and accessible to the public free of charge, but on the remaining days of the week the same should be only open for exhibition to such persons upon such terms as the museum should from time to time direct; "but all professors and teachers of the public schools of the city of New York, or other institutions of learning in said city in which instruction is given free of charge, shall be admitted to all the the advantages afforded by the said party of the second part [the Metropolitan Museum Corporation], through its museum, library, apparatus and collections, or otherwise, for study, research and investigation, free of any charge therefor, and to the same extent and on the same terms and conditions as any other persons are admitted to such advantages as aforesaid," with a further provision that the Museum Corporation may, at any time after the expiration of three and before the expiration of nine months from the date of

the service of the notice in writing to the city of New York, quit and surrender the said premises and remove all its property therefrom, and that, in case the Museum Corporation shall fail to perform any of the covenants, articles, clauses, agreements, matters, and things contained in said agreement, then the grant and demise should be utterly null and void, and thereupon the city of New York shall repossess and enjoy the said premises.

In the report of the corporation for the year ending December 31, 1905, it announced that it had in the previous February adopted a resolution that the board of education be notified of the willingness of the trustees to issue to any teacher in the public schools, under such regulations as the board of education may prescribe, a ticket entitling each teacher to free admission to the museum at all times when the museum is open to the public, including pay days, either alone or when accompanied by not more than six public school scholars, for whose conduct such teacher shall be willing to become responsible. The board of education accepted this offer, and its president had caused to be issued to all teachers in the public schools notice concerning teacher's tickets, and that 1,093 applications therefore had been received. It also appeared that there had been issued during the year 1905, 491 permits to copy, and that there had been 968 drawings and copies made. There was submitted to the appraisers an affidavit of the secretary of the corporation "that the said Metropolitan Museum of Art is solely an educational corporation, and is not a moneyed or stock corporation, deriving an income or profit from its capital or otherwise, and it has not the right to make dividends, nor to distribute profits or assets among its members, but is engaged exclusively in the purposes of its incorporation; * * * that no officer, member or employé receives or is entitled to receive any pecuniary profits from the operations of the said museum, except reasonable compensation for services in effecting one or more of the purposes for which said museum was organized; that the said Metropolitan Museum of Art was incorporated and is maintained exclusively for educational purposes"; that the city of New York during the year 1905 contributed $150,000 towards the administrative expenses of the museum, the actual expenses being upwards of $216,000, the balance being contributed by the association; that the museum is open to the public each day of the week, including Sundays, and also two evenings in the week, and is free, excepting two days, when a small entrance fee of 25 cents is charged, with exceptions in favor of teachers; that the attendance during the year 1904 was over 724,000, for the year 1905 over 744,000, and for 1906 more than 761,000; that there is a constant visit to the museum of classes from schools and universities, and has been for many years past; that there is co-operation with the public schools of the city; that universities, colleges, and private schools in the city of New York and elsewhere constantly avail themselves of the educational advantages of this institution, and, among others, the West Point Academy makes regular visits of its students to the museum; that the corporation maintains a library, and lectures for instruction are frequently given by members of the museum staff and others in

the museum building; that the library is open daily for all students, with a librarian and assistant librarian in charge.

The question is presented whether this institution is within the exception to the tax law (Laws 1896, p. 868, c. 908) enacted by chapter 368, p. 827, of the Laws of 1905. Prior to the amendment of 1905 the section provided that:

"There shall also be exempted from and not subject to the provisions of this act personal property other than money or securities bequeathed to a corporation or association organized exclusively for the moral or mental improvement of men or women or for charitable, benevolent, moral, hospital. infirmary, educational, scientific, literary, patriotic, cemetery or historical purposes or for the enforcement of laws relating to children or minors or for two or more such purposes and used exclusively for carrying out one or more of such purposes."

This did not exempt from the tax "moneys or securities"; but by chapter 368, p. 829, of the Laws of 1905, section 221· of the tax law (chapter 908, p. 869, of the Laws of 1896) was further amended by providing:

"But any property devised or bequeathed to any person who is a bishop or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, including corporations organized exclusively for Bible, or tract purposes shall be exempt from and not subject to the provisions of this act."

And this provision was in force at the time of the death of the testator. The section as it read before this amendment, which exempted a bequest of personal property other than moneys or securities bequeathed to a corporation or association organized for the purposes mentioned, limited the exemption to property thus transferred and used exclusively for carrying out one or more of the specified purposes; but the amendment of 1905 was, in effect, properly devised for educational, charitable, missionary, benevolent, hospital, or infirmary corporations was not taxable, but where legacies to Bible or tract corporations were only exempt when "organized exclusively for Bible or tract purposes." A bequest, therefore, to an educational corporation was exempt, and the question is whether a bequest to the Metropolitan Museum of Art, to be applied to the uses and purposes of its incorporation, is properly bequeathed to an educational corporation.

The omission of words indicating an idea to confine this exemption to corporations "exclusively"· incorporated for these purposes, when that word is added to the exemption of corporations organized for Bible or tract purposes, should have significance in determining the intention of the Legislature. I do not suppose that it is essential to constitute an educational corporation that there should be furnished a regular corps of teachers, with regular classes of students. A corporation which is organized for the purpose of supplying instruction to those who are willing to accept the facilities or opportunities supplied, it seem to me, is organized for an educational purpose. Certainly education is not confined to the youthful and immature, and the appliances and restrictions which are essential to the stimulation to study of youthful and immature persons are not necessary, when the aim of the institution is to supply education in the higher branches

to more mature students. With the advance of knowledge of medical science in the last half century, the prevention of disease has been ascertained to depend largely upon the habits and sanitary regulations of individuals, and certainly a corporation organized for the education of people generally in the observance of proper and scientific sanitary rules to escape infection from tuberculosis and diphtheria and other kindred diseases, especially where such education was free to the public and to all who would avail themselves of the opportunities afforded, would be an educational institution, although no classes were established and no regularly paid professors employed to teach such classes. Such instruction could be given by establishing museums and exhibitions illustrating the methods by which such diseases are contracted and the methods to be adopted to avoid infection; and the fact that many people would attend such museums, exhibitions, or collections, and avail themselves of the opportunities offered from curiosity or desire to increase their knowledge, would be strictly in line with the educational objects for which the corporation was organized. This principle would apply as well to a corporation organized to educate and develop the people in the study of art as in the study of principles of sanitation.

This corporation was incorporated by the Legislature "for the purpose of establishing and maintaining in said city a museum and library of art, of encouraging and developing the study of the fine arts, and the application of arts to manufacture and practical life, of advancing the general knowledge of kindred subjects, and, to that end (namely, encouraging and developing the study of the fine arts), of furnishing popular instruction and recreation." Thus the objects for which the institution was established are directly connected with encouraging and developing the study of the fine arts and the application of arts to manufacture in practical life, and for advancing the general knowledge of kindred subjects, and to that end to furnish popular instruction and recreation. There is no object of furnishing a place for recreation disconnected with the study of these subjects and of advancing the general knowledge of kindred subjects, and it seems to me clear that under this provision of its charter the corporation would not be justified in establishing any museum or library that had no connection with the study and advancing of general knowledge of these specified arts. The whole object of this association is directly connected with higher education. It is organized for no other purpose; and, so far as appears by the record, it has consistently used the moneys and property given to it solely for the purpose of encouraging and developing the study of the fine arts and advancing the general knowledge of kindred subjects. To say that this is not an educational corporation would, it seems to me, justify the directors in changing the museum into a scheme for personal profit, rather than an institution which is strictly devoted to the higher education. That the establishment of this institution has been of incalculable benefit to the city and state of New York is known to us all, and I think can justly be inferred from the contributions that have been made to it under the direct authority of the Legislature by the city of New York. The city has furnished expensive and imposing buildings upon its most im-

portant public park, and contributed $150,000 of the public money a year to the maintenance of the institution. The corporation itself has applied for that purpose, in addition to the contribution by the city, over $50,000 a year; and the corporation offers to educational institutions, including the public schools of the city of New York, both to teachers and students, advantages of study of its exhibits and the hearing of lectures upon art and kindred subjects. That the state should attempt to tax the contributions to this corporation to be used in supplying the deficiencies in the expense of its maintenance over and above that contributed by the city for the institution, and which is so largely maintained by the city for the benefit of citizens and the rest of the people of the state, is certainly surprising, and no such intention should be inferred, except upon the clearest evidence.

The Comptroller relies upon the general principle that statutes of exemption from taxation must be strictly construed against the person or corporation claiming it, and if the exemption is not plainly expressed it will not be presumed. But this principle has been generally applied in cases where an exemption is claimed from the general burden of taxation which is common upon all property or upon the people generally; and where a tax imposed is not such a common burden, but a special tax, reaching only to special cases, and affecting only a special class of persons, the rule is that to subject such a class of persons to the tax requires a clear legislative intention. This qualification of the rule has been applied by the Court of Appeals to the transfer tax. Matter of Harbeck, 161 N. Y 211, 55 N. E. 850; Matter of Fayerweather, 143 N. Y. 114, 38 N. E. 278; Matter of Enston, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464. As was said in the latter case:

"The executors in this case do not, therefore, in any proper sense, claim exemption from a general tax or common burden. Their claim is that there is no law which imposes such a tax upon the property in their hands as executors. If they were seeking to escape from general taxation, or to be exempted from a common burden imposed upon the people of the state generally, then the authorities cited by the learned counsel for the people, to the effect that an exemption thus claimed must be clearly made out, would be applicable. But the executors come into court claiming that the special taxation provided for in the law of 1885 is not applicable to them, or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of law."

In Matter of Francis, 121 App. Div. 129, 105 N. Y. Supp. 643, affirmed 189 N. Y. 554, 82 N. E. 1126, an attempt was made to tax a legacy to a library corporation, and it was held that library corporations under the act prior to the amendment of 1905 were given a limited exemption, but were not included in the general exemption given by the amendment of 1905, and that it must have been the intention of the Legislature not to include library corporations within the definition of educational corporations—a principle which plainly does not apply to this case. As this corporation was established by a special charter, and not incorporated under a general law, the question

as to the nature of the corporation must be determined by the objects specified by the Legislature as those for which it was incorporated; and when the objects for which a corporation is incorporated are educational, and the corporation is engaged in educating those who take advantage of·the facilities offered, it can, I think, be fairly said that it is an educational corporation and within, the exemption provided for by the amendment of 1905.

In Matter of Watson, 171 N. Y. 256, 63 N. E. 1109, the testator died in 1900, before the amendment to this section now under consideration. The bequests in that case were to the Young Men's Christian Association of the City of Rome and to the Missionary Society of the Methodist Episcopal Church. All that the court in that case held was that neither of these corporations was a religious corporation, and in that case, as well as in the case of Matter of Huntington, 168 N. Y. 399, 61 N. E. 643, the Court of Appeals expresses its conviction that such corporations had been overlooked in the codification of the statutes relating to taxable transfers, and indulges in the hope that the inequities and inconsistencies of the latter might give way to a more liberal and just rule. And in this case we may express our gratification that this strictly benevolent and educational institution will not have the funds contributed for its maintenance and continuance depleted by taxation, which would seem to be opposed to the consistent and almost universally applied policy of the state since·its organization.

Our conclusion, therefore, is that the order appealed from should be reversed, with $10 costs and disbursements, and this bequest declared not taxable.

LAUGHLIN and CLARKE, JJ., concur.    HOUGHTON, J., dissents.