(71 Misc. Rep. 390.)

## In re ARNOT'S ESTATE.

(Surrogate's Court, Chemung County.　March, 1911.)

TAXATION (§ 876*)—EXEMPTION—"EDUCATIONAL CORPORATION."

A devise of real or personal property to a corporation to be formed, to establish an art class to which the public was to have free access, and a reference library to be free for all, is an "educational corporation" and exempt from the transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

In the matter of the appraisal of the estate of Matthias H. Arnot. Order exempting certain property from taxation affirmed.

Stanchfield, Lovell, Falck & Sayles, for executors.

H. M. Lovell, for State Comptroller.

McCANN, S.　Matthias H. Arnot died at the city of Elmira, N. Y., on the 15th day of February, 1910.　His last will and testament was probated in this court on the 24th day of March, 1910.　On August 16, 1910, the Chemung county treasurer filed his report as appraiser under the transfer tax law (Consol. Laws 1909, c. 60, §§ 220–245).　Upon such report an order was entered assessing the transfer tax, and from such order this appeal is taken.　The only question now involved is the taxability of a certain transfer made to "Arnot Art Gallery" (a corporation to be formed).

The provisions of the will applicable to the question here involved read as follows:

"I direct my executors hereinafter named and appointed, and while my sister Fanny Arnot Haven and my niece Marion Arnot Wickes are or the survivor of them is living, to cause to be created and organized under the proper statute or statutes of the state of New York, a corporation with the name Arnot Art Gallery, with capacity and right to receive, take and hold, in the manner and for the uses and purposes herein, in a general way set forth, the property and that part of my estate I do hereinafter by this will give, devise and bequeath to said corporation.　(Here follows the description of real estate donated.)　Also the following described or mentioned personal property; each and every of the paintings, engravings, etchings, photogravures, photographs, pictures and objects of art within my said residence, two glass cases and their contents being curios, and all curios elsewhere within my said residence, two busts in marble, one of which is of my father, John Arnot, the other designated the Wept of Wish-Tom-Wish, and all statuary within my said residence, all vases and bronzes therein, the two clocks in the present gallery of my said residence and the clock in the front parlor thereof; all the printed books, pamphlets and literary productions therein, all cases, cabinets, tables or stands, in or upon which any of the foregoing mentioned articles are kept or placed.　It is my intention and desire that my executors construe the gift and devise of this twenty-third paragraph broadly and deliver to said corporation all articles of artistic or literary nature, appropriate to the purposes of said corporation as herein set forth; also the sum of ten thousand ($10,000) dollars; also the sum of two hundred thousand ($200,000) dollars to be paid or delivered to said corporation in bonds or securities of my estate at their par value.　The purpose of this gift and devise affected by this paragraph twenty-third is or may be twofold.　The primary and fundamental purpose thereof is to establish, under the perpetuity of corporate ownership and management, and endow an institution, which shall have the city of Elmira and my residence therein as its seat and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

permanently own, possess, protect and continually add to a collection of objects of art of real merit and enduring worth and interest, to which the public shall have, under reasonable regulations, free access. The secondary purpose thereof is to establish and endow a library, exclusively for reference and not to any extent for circulating uses, which, owned, maintained and enlarged by said corporation, shall be accessible and free, under proper regulations, to all who may seek aid therefrom. It may be, however, that the income from said corporation will be inadequate for the two purposes. The corporation shall be guided and controlled by the principle, that said primary purpose is paramount, but that the second purpose is very desirable, and shall be carried out and into effect whenever and as practicable."

The appraiser treated as exempt all property which passes to the proposed corporation to be called "Arnot Art Gallery."

The appellant claims that this property should be taxed, because it is not included within the exemption provisions of the transfer tax law.

Respondent insists that the provisions of the will bring the devise and bequest within the language of the transfer tax law, which language exempts "educational" corporations.

The question then to be decided is: What kind of a corporation will the "Arnot Art Gallery" be, to which this transfer is made? The various cases which have been cited, interpreting the language of the transfer tax law, all have some bearing upon the solution of the question arising upon this appeal; but none of these cases seem to be more applicable than Matter of Mergentime, 129 App. Div. 367, 113 N. Y. Supp. 948, and Matter of Moses, 138 App. Div. 525, 123 N. Y. Supp. 443.

I believe, from the principles of construction and interpretation as laid down in these two cases, that it must be held that "Arnot Art Gallery" is or will be an educational corporation.

Appellant has cited many authorities upon the proposition that the status of a corporation must be determined by the statute under which it is incorporated, and not by the nature of the acts it assumes to do thereunder. Matter of White, 118 App. Div. 869, 103 N. Y. Supp. 688.

This corporation has not yet been organized; therefore the nature of said corporation cannot be determined by any statute or by any articles of incorporation. Whenever such corporation shall be organized, it must be in accordance with the intention and directions of the testator; otherwise it will be ineffective. We must therefore determine the nature of such corporation from the intention of the testator, from the reading of his will, and from the nature of the property transferred thereunder. The property so transferred consists of real estate, cash, the contents of the testator's art gallery, and articles now in his residence, which might not strictly be called works of art, but which are of a decorative nature and many of which are simply articles of furniture. The art gallery of the testator has not been appraised; but a list of the contents was furnished to the appraiser, and the question of value left until the question of the taxability shall have been determined. It appears, however, from the list of articles inventoried and from a catalogue of the testator's private collection, that the specific articles of personal property, so transferred, consti-

tuted a complete, private art gallery of valuable paintings, completely and exhaustively catalogued by the testator; also collections of rare dishes, pieces of ivory, statuary, etc. As to whether or not such articles, placed in a so-called art gallery for the benefit of the public and free of access to the public, under suitable regulations, would become an educational institution, is one which, it seems to me, has been passed upon in the Matter of Mergentime, supra, cited. The articles of incorporation of the Metropolitan Museum of Art, which was the corporation in question in the Mergentime Case, define its purpose in the following language:

"For the purpose of establishing and maintaining in said city a museum and library of art, of encouraging and developing the study of the fine arts and the application of arts to manufacture and practical life, of advancing the general knowledge of kindred subjects and, to that end, of furnishing public instruction and recreation."

It will readily be observed that the language used here is much more specific than the language in the Arnot will; but the intention of the testator, Arnot, is set forth in language which shows that the purposes of "Arnot Art Gallery" are akin to those of the Metropolitan Museum.

The testator says:

"The purpose of this gift and devise affected by this paragraph twenty-third is or may be twofold. The primary and fundamental purpose thereof is to establish, under the perpetuity of corporate ownership and management, and endow an institution, which shall have the city of Elmira and my residence therein as its seat and permanently own, possess, protect and continually add to a collection of objects of art of real merit and enduring worth and interest, to which the public shall have, under reasonable regulations, free access. * * * "

A secondary purpose is then stated in the will; but I think that the primary purpose, as defined, must be considered in arriving at the nature of this corporation.

The testator indicates a wish that the collection shall be continued and added to by the addition of objects of real merit. This must be construed as "real merit" judged by the standard fixed by a student or one educated in art. While I have stated that I think that his primary purpose should control, it may be said that, in referring to the secondary purpose, to wit, the establishment of a library, he shows further that his intent is that it shall be for educational purposes, by limiting it to a "library exclusively for reference" and "free to all who may seek aid therefrom." The tenor of the will seems to be to continue the collection bequeathed for the purpose of elevating and educating the minds of those who shall have opportunity to visit and take advantage of the facilities offered by the testator.

The appellant has referred to an art gallery as "a nonteaching art gallery." I cannot agree with him in the use of such a designation. Colleges and universities maintain art galleries as a part of their educational systems, from which education and information may be derived from mere observation and from the object lessons presented rather than from lectures and descriptive instruction. Rare works of art teach for themselves, and a student of art needs no lecturer to

point out to him the merits or demerits of a particular painting or work of sculpture. The intention of the testator in this case may also be gathered from a knowledge of the manner in which this private collection was regarded by its owner in his lifetime, as bearing upon what purpose he expected it would serve after his death. What motives could he have anticipated would inspire the public to avail themselves of such a corporation?

First. A possible curiosity to see a rare collection such as few citizens ever have an opportunity to see.

Second. A possible curiosity to know what the testator had gathered, with a view of ascertaining his peculiarities, or tastes, or his way of spending his wealth for his personal gratification.

Third. A desire to learn from the works of art, and to become better educated and more familiar with such works.

It is possible that a few citizens would be inspired by one of the first two motives above mentioned; but it is fair to assume that the greater majority would be moved by the third or higher motive.

The specific articles bequeathed show a nucleus for a large and extensive museum or art gallery, which the testator intended should be continued for the purpose for which he had collected it, which purpose, ideas, and views are well defined in the quotation which the testator printed on the title page of the catalogue of his private collection, and which reads as follows:

"A talent for any art is rare, but it is given to nearly every one to cultivate a taste for art; only it must be cultivated with earnestness.

"The more things thou learnest to know and to enjoy, the more complete and full will be for thee the delight of living.—Plato."

This certainly shows that the testator regarded art as a means of education.

I have carefully read the provisions of the statute exempting certain corporations from taxation, also the definitions of the various words used, descriptive of the corporations so exempted; and I must arrive at the conclusion that "Arnot Art Gallery," when formed in accordance with the wishes of the testator, will be an "educational" institution; and I believe that the two cases above cited are sufficient authority for so holding.

The order of the surrogate exempting said property from taxation should be affirmed.

Decreed accordingly.