trustee on January 6, 1909, by an order of the Supreme Court, and admits that by reason of the death of Charles Stockton Halsted and pursuant to the provisions of the will of Catherine Crane Halsted the trust fund held by it as trustee is now distributable. No objection, either in this accounting or the other, is filed as to any of the items of the accounts, and it appears that each account contains a correct statement of the receipts and expenditures.

The Union Trust Company is entitled to have the trust fund of $25,000, which now belongs to the executor of Charles Stockton Halsted, paid first to it as substituted trustee under the will of Catherine Crane Halsted, and by it paid over to the estate of Charles Stockton Halsted, so as to obtain its commission on the fund. But the executor in his brief states that the counsel for the trust company in open court announced his willingness to have the fund paid directly to the estate of Charles Stockton Halsted. If this be so, I see no reason why the decree in the estate of William A. Halsted should not provide for the payment of the fund directly to the estate of Charles Stockton Halsted. But I believe that the consent in writing of the Union Trust Company should be filed.

The above-named decedent also leaves an individual estate, but no objection is filed to the account as to this. The only objection is as to the $25,000 trust fund.

Decreed accordingly.

(77 Misc. Rep. 54.)

### In re SAUNDERS' ESTATE.

(Surrogate's Court, Westchester County. May, 1912.)

1. TAXATION (§ 876*)—TRANSFER OF TAXES — EXEMPTIONS — "EDUCATIONAL CORPORATION."

    A devise of a residuary estate to the city of Yonkers, in trust, to found a trades school under the direction of the board of education and as a part of the school system, providing that all payments and investments of the fund are to be under direction of the board of education, is a devise to an educational corporation within Tax Law (Consol. Laws 1909. c. 60) § 220, and is not subject to a transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*

    For other definitions, see Words and Phrases, vol. 3, p. 2317.]

2. TAXATION (§ 860*)—TRANSFER OF TAXES—EXEMPTIONS.

    In cases referring to a transfer tax, the burden of proving a clear legislative intention to tax the property rests upon the comptroller.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1675; Dec. Dig. § 860.*]

3. TAXATION (§ 876*)—TRANSFER OF TAXES—EXEMPTIONS.

    A bequest of money to a city public library is subject to a transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

4. TAXATION (§ 876*)—TRANSFER OF TAXES—EXEMPTIONS.

    A bequest of money to a county society for the prevention of cruelty to children is subject to a transfer tax.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. TAXATION (§ 876*)—TRANSFER OF TAXES—EXEMPTIONS.

Where a testator who had no immediate family, but left an estate of over a million dollars, after directing that he be laid in the family cemetery lot owned by him and his two brothers, provides for changes being made in the lot with their consent and the erection of a granite block therein at an expense of not to exceed $5,000, and it is their intention to substantially expend that sum in making the improvement, the testator's executors were entitled to an exemption of one-third of that sum in fixing the transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1693–1699; Dec. Dig. § 876.*]

6. EXECUTORS AND ADMINISTRATORS (§ 498*)—COMPENSATION—COMMISSIONS.

Where a will directed that real estate be converted into personalty, the executor's commissions should be figured accordingly; and, where the personal estate as found by the tax appraiser is valued at $586,000 and the real estate at $487,000, each executor is entitled to full compensation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2125–2129; Dec. Dig. § 498.*]

7. EXECUTORS AND ADMINISTRATORS (§ 109*)—ACCOUNTING—BROKER'S COMMISSION.

Executors are entitled to have allowed as an expense necessarily incurred and to be incurred in disposing of real estate a broker's commission of 2½ per cent. on the appraised value after deducting the commission on a sale on which no commission was paid.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 435–438, 440–447, 763; Dec. Dig. § 109.*]

Appeal from Report of Transfer Tax Appraiser.

Transfer tax appraisal of the estate of Ervin Saunders, deceased, under the acts in relation to taxable transfers of property. From the report of the appraiser, the city of Yonkers and others appeal. Modified.

William A. Moore, of New York City, for state comptroller.

Arthur J. Burns, of Yonkers, for Saunders, executor.

Remsen & Parsons, for Farmers' Loan & Trust Co., executor.

Thomas F. Curran, Corp. Counsel, for city of Yonkers.

Charles E. Otis, of New York City, for the Yonkers Public Library.

Lincoln G. Backus, for Westchester County Society for Prevention of Cruelty to Children.

MILLARD, S. Ervin Saunders died in the city of Yonkers on the 17th of February, 1909, leaving a last will and testament under and by virtue of the provisions of which Leslie M. Saunders of the city of Yonkers, and the Farmers' Loan and Trust Company, of the city of New York, were appointed executors. A petition was duly presented, and thereupon an order was entered sending this proceeding to the transfer tax appraiser, who first filed a report on the 4th of April, 1910, and thereafter an order was entered sending the same back to him for further consideration, and a new report, from which the appeals in this matter have been taken, was made and filed on the 28th of May, 1910.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By this report it appears that the testator's estate was appraised at the sum of $1,074,595.75, of which $586,621.92 was personal property and $487,973.83 was real estate. From this the appraiser deducted the sum of $38,287.48 for debts and expenses of administration, leaving the total estate transferred as per the appraiser's report $1,036,308.27. All of this large sum, with the exception of $59,189.50, is bequeathed for charitable purposes in the city of Yonkers. Four hundred and fifty thousand dollars was bequeathed to the Yonkers Homeopathic Hospital and Maternity Home, but, as the appraiser exempted this bequest from taxation, no appeal has been taken therefrom. From the order entered on the report of the appraiser as to all other charitable bequests, as well as certain other matters, four separate and distinct appeals have been taken, and, as I think it best that each one be considered separately, I will, at this point in my memorandum, incorporate a statement as to each one of the appeals and then discuss them in their order.

First. After certain other bequests, all the rest, residue, and remainder of his estate, which was appraised at the sum of $427,-118.77, was bequeathed to the city of Yonkers for the purpose of founding the Saunders Trade School. This is taxed in the appraiser's report at 5 per cent. and an appeal is taken by the city of Yonkers, as well as the executors, from this portion of the order.

Second. Fifty thousand dollars were bequeathed to the Yonkers Public Library. This was taxed at 5 per cent. in the appraiser's report and order entered thereon, and from this the trustees of the library and the executors appealed.

Third. Fifty thousand dollars was bequeathed to the Westchester County Society for the Prevention of Cruelty to Children. This was taxed in the appraiser's report at 5 per cent. and from the order made thereon the executors and the officers of the society appealed.

Fourth. The executors also appeal from the following parts of the order entered upon the appraiser's report:

(a) The failure to allow $5,000 as provided in the first paragraph of the will for the improvement of the plot in St. John's Cemetery of the city of Yonkers.

(b) The refusal to allow $22,000 for executors' commissions in place of $10,778.50, amount allowed by appraiser.

(c) Because of the failure to allow $12,000, the sum which is claimed must be necessarily paid for commissions on sale of the real estate of the said testator.

[1] The bequest for the Saunders Trade School is made in the eighth paragraph of the will and was subject to certain conditions, which need not be considered at this time, because all of them had been fulfilled before the matter came before me. Without giving in detail the provisions, an examination of the will shows that the residue of the estate is bequeathed to the city of Yonkers, in trust, to found and maintain a trades school under the direction of the board of education and as a part of the public school system for the teaching of mechanical trades and practical and scientific

knowledge connected therewith, to such persons as wish to learn a trade by which to earn their living particularly; that restrictions as to subjects taught may be modified from time to time by the board of education, who also are given the power to invest the fund herein bequeathed and to keep the same invested and to collect and receive the income and apply the same, including a portion of the principal, if necessary, for the construction and maintenance of said school.

A reading in detail of said section shows that all payments and investments are under the direction or in the discretion of the board of education.

It is claimed by the State Comptroller that the appraiser's report is right, and that this bequest is taxable, being made to the city of Yonkers, which is not a corporation entitled to exemption, and on behalf of the executors and the city of Yonkers, it is claimed that the report is erroneous because it is a bequest to an educational and charitable corporation and exempt under the law.

Section 220 of the Tax Law, relating particularly to taxable transfers, provides for a tax upon real and personal property as set forth in said paragraph, and section 221 sets forth certain exceptions and limitations upon the provisions of the former section and among other things contains this provision:

"But any property devised or bequeathed to any person who is a bishop or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, including corporations organized exclusively for bible or tract purposes shall be exempt from and not subject to the provisions of this article."

If, therefore, this bequest to the city of Yonkers can be considered a bequest to a corporation of this kind, which the state comptroller claims is impossible, the legacy will not be subject to any tax.

If some resident of the village of Tarrytown, desiring to provide for the school of his native place, should have bequeathed to the board of education of school district No. 1 of the town of Greenburgh, which is the Tarrytown district, a sum of money to be used for the purpose of establishing in that district a trades school, I do not believe that any claim would be made on the part of the comptroller that such a bequest was taxable, and his argument in this case is based entirely upon the fact that this bequest is made to the city of Yonkers, which he claims is not an educational or charitable corporation in its strict sense but merely a municipal corporation, and I would agree with him if the bequest was to the city of Yonkers of the residue of the estate, without any further provision as to what was to be done with it.

An examination of the statutes shows that by chapter 397 of the Laws of 1881 all the school districts in the city of Yonkers were consolidated and made one school district; that having become a second-class city on the 1st of January, 1908, it became subject to the charter relating to second-class cities, and was so affected until its local city charter went into effect on the 21st of May, 1908,

which is known as chapter 452 of the Laws of 1908; that article 9 of said charter refers to its department of public education, and by section 1 of that article it is provided:

"The title of the school houses, sites, lots, furniture, books, apparatus, appurtenances, and all other school property connected with or constituting part of the public school system of the city of Yonkers shall be vested in the city of Yonkers. The city may in its corporate capacity take and hold any personal or real property transferred to it by grant, gift, devise or bequest, in trust, for the benefit of the schools of the city, or any of them, whether said property be transferred in terms to said city by its corporate name or by any other designation, or to any person or body for the benefit of said schools or any of them.

"Sec. 2. The head of the department of public education shall be the board of education which shall be composed of fifteen trustees, residents of the city.".

Thereafter in the different sections the powers of the board of education are clearly set forth, and show that they have the sole management and control of all the educational matters connected with said city, and in subdivision 4 of section 6 the power to establish industrial schools is distinctly provided for.

The papers before me show that the city of Yonkers spends annually nearly $400,000 for the benefit of 25,000 children in maintaining 21 schools and 325 teachers. The fact, as is shown above, that all these schools were consolidated into one district, which is under the sole management and control of the board of education, to my mind makes it plain that this is a parallel case to the one cited above, and that any resident of the city of Yonkers desiring to make a bequest for the benefit of the schools of that city, being thoroughly familiar with the law above quoted, that the title of all the property should be vested in the city of Yonkers, would have made it exactly as Mr. Saunders did. His bequest is not made to the city of Yonkers to do with as its officers please, but is made to the city of Yonkers, in trust to do certain things under the direction and in the discretion of the board of education, and neither the principal of the fund nor its income can be used in any way except for the purposes of education, and, as the law provides that the property shall be vested in the city of Yonkers, it certainly must be a proper bequest for educational purposes when it is made directly to it with the provisions, conditions, and restrictions as in said will set forth.

[2] It is a well-settled principle of law that, in cases referring to a transfer tax, the burden of proving a clear legislative intention to tax the property rests upon the comptroller, and in arriving at a conclusion I am impressed with the correctness and justice of the statement of the court in Matter of Mergentime, 129 App. Div. 367, 113 N. Y. Supp. 948:

"That the state should attempt to tax the contributions to this corporation, to be used in supplying the deficiencies in the expense of its maintenance over and above that contributed by the city for the institution, which is so largely maintained by the city for the benefit of citizens and the rest of the people of the state, is certainly surprising, and no such intention should be inferred except upon the clearest evidence."

I also thoroughly concur in the statement of Surrogate Ostrander in Matter of Moore, 66 Misc. Rep. 121, 122 N. Y. Supp. 832, where he says:

"I do not think the Legislature ever intended to tax benevolently inclined people for the privilege of making legacies designed to relieve the state of its burdens. No more effectual way of stopping such benevolence could be well devised. While the courts have no power to prevent the Legislature from establishing such a greedy and foolish policy, they should not by construction impute such intention in cases where it does not clearly appear, nor, by hair-splitting construction of the statute, entrap unwary persons who desire to limit their benefactions to the state by the amount set out in the legacy."

The testator in this case left practically his whole estate for the benefit of charitable institutions of the city of Yonkers, which cannot help but relieve the citizens to that extent from assessments and charges which they would otherwise pay, and such legacies are not to be discouraged. The "Thirteenth" clause of the will shows the intention of the testator, and I quote it in full:

"Thirteenth. In view of the fact that I have seen fit to give the greater portion of my estate to public uses it may be proper for me to state my reasons for so doing, namely: being a bachelor and having no relatives or other persons directly dependent upon my bounty and considering my next of kin sufficiently independent not to require further provision I conceive it to be my duty as well as a privilege and pleasure to devote a substantial portion of my estate to what seems to me to be the best interests of my home city, in which I have spent a happy life and acquired my property, and thus to assist in the relief of suffering therein and to aid the youth thereof to live more useful lives, to establish and maintain happier homes and to become better citizens and thus to bring the greatest good to the greatest number of my fellow citizens."

This is an unusual case, and few have ever done as much for their home city as Mr. Saunders, and, unless it is an absolute necessity, nothing should be deducted from the legacies provided by him. I therefore decide that this bequest is a bequest to an educational corporation, and is exempt from taxation, and that the order entered upon the appraiser's report should be reversed in so far as it provides for a tax upon the said legacy.

[3] As to the appeal of the Yonkers Public Library, I entertain the same views and feelings as I have expressed in connection with the establishment of the trades school, but, as I read and construe the law, I must decide otherwise. The Yonkers Public Library originally consisted of separate school libraries which were thereafter consolidated and made one, and later, in order to allow the public to use the library as a circulating library, it was put under the charge of the regents of the state of New York and a certificate of incorporation was granted on the 9th of February, 1893, and from that date until the present time the Yonkers Public Library has been a corporation thus incorporated and an institution of the University of the State of New York supported entirely and exclusively by moneys raised by the city of Yonkers for that purpose and by moneys received from the state of New York.

In considering this question, I feel that I am bound to follow the decision in Matter of Francis, 121 App. Div. 129, 105 N. Y. Supp.

643, affirmed 189 N. Y. 554, 82 N. E. 1126, where a legacy made to a library similarly incorporated and open to the public was held to be subject to taxation. I have no hesitation in saying that I believe that the statute should be changed by the Legislature so that legacies of this kind should be exempt, but in deciding this case I am bound·by the statute and the decisions applicable thereto.

It is urged in the brief of the attorney for the library that in the Francis Case it was not shown that the library was owned by the public and supported by them, although it clearly appears that it was incorporated in the same way and was used by the public. I do not consider this distinction sufficient to remove it from the provisions of the statute.

Under section 221 of the Tax, Law property bequeathed to an educational corporation is exempt, but there follows this provision:

"There shall also be exempt from and not subject to the provisions of this article personal property other than money or securities bequeathed to a corporation or association organized exclusively for the moral or mental improvement of men or women, or for scientific, literary, library, patriotic, cemetery or historical purposes or for the enforcement of laws relating to children or animals or for two or more of such puposes and used exclusively for carrying out one or more of such purposes."

As stated in that case, if the legislative intent, expressed by this statute, was to include library corporations in the general class which the statute describes as educational, then the particular reference in the statute to library corporations would be apparent surplusage.

This legacy .is a bequest of money, and is therefore not covered by this last provision of the law so as to make it exempt when bequeathed to a library corporation.

My attention has been called to the decision in Matter of Mergentime, 129 App. Div. 367, 113 N. Y. Supp. 948, where a bequest to the Metropolitan Museum of Art was held to be exempt on the ground that it was an educational corporation, and I quite agree with the court in its decision, but there something more than a library was involved, and is the reason why the court could overlook the strict reading of the statute applicable to a library corporation. I have also examined Matter of Arnot, 145 App. Div. 708, 130 N. Y. Supp. 499, where the court exempts a legacy to the Arnot Art Gallery on the ground that it also was an educational institution, but I do not think that either of these cases, as much as I should like to have it that way, furnishes sufficient grounds to exempt the bequest in this · case, and I therefore affirm the order heretofore made taxing this legacy to the Yonkers Public Library.

[4] The third appeal as before mentioned is the appeal of the Westchester County Society for the Prevention of Cruelty to Children, which was taxed by the order appealed from, upon a legacy of $50,000. This society claims to be exempt on the ground that it is a charitable corporation and as such exempt by reason of the exception provided for charitable corporations under section 221 of the Tax Law. The surrogate of Suffolk county in a similar matter arising in the estate of Betsey Head, on the 30th of March, 1908,

entered an order holding that the New York Society for the Prevention of Cruelty to Children was taxable (see McElroy Transfer Tax Law, 311), but the matter was again presented to the court in Matter of Moses, which first came before Surrogate Ketcham and whose decision exempting the estate from taxation is to be found in 60 Misc. Rep. 637, 113 N. Y. Supp. 930. Upon appeal, however, the decision of the surrogate was reversed, and the legacy in that case to the Brooklyn Society for the Prevention of Cruelty to Children was held to be taxable. See Matter of Moses, 138 App. Div. 525, 123 N. Y. Supp. 443.

The statute under which the exemption is claimed is the same one under which the legacy to the library was claimed to be exempt, and is as follows:

"But any property devised or bequeathed to any person who is a bishop or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, including corporations organized exclusively for bible or tract purposes, shall be exempted from and not subject to the provisions of this article. There shall also be exempted from and not subject to the provisions of this article personal property other than money or securities bequeathed to a corporation or association organized exclusively for the moral or mental improvement of men or women or for scientific, literary, library, patriotic, cemetery or historical purposes or for the enforcement of laws relating to children or animals or for two or more of such purposes and used exclusively for carrying out one or more of such purposes."

The surrogate's decision above referred to was based solely upon the ground that this society was a charitable institution and belonged to the first class specified in the statute, and was therefore entitled to complete exemption.

The Appellate Division, in referring to the matter and to the provisions of the statute, said:

"We must seek the definitive term, and I think that we find it in the expression of the partly exempt class 'organized * * * for the enforcement of laws relating to childen.' "

In other words, the same reasoning as applied to the library is applied to this case, that it is one of the corporations specially provided for and not included under the general term of charitable, the same as the library was especially held not to be included in the term educational.

In the brief submitted, it is claimed that this is not a similar corporation to the one affected by the decision of Matter of Moses, because this corporation was incorporated under article 5, c. 559, of the Laws of 1895, whereas the other was incorporated under chapter 130 of the Laws of 1875, and that they are not similar. An examination of the two statutes, however, shows no practical difference that I can discover. Practically the same provisions as are pointed out in the decision of Matter of Moses, as additional powers granted to the Brooklyn society, are also provided for in section 72 of article 5 of the law under which the Westchester county society was incorporated. The titles of both of said acts are similar except that the one incorporating the Brooklyn society is limited to the incorporation of societies for the prevention of cruelty

to children while the other one provides also for the incorporation of societies for the prevention of cruelty to animals as well, and this later statute repeals the former one.

This again is a case which, if the statute and the decisions would allow, I would be very glad to treat as exempt, and consider that the Legislature should have changed the law so as to allow such legacies to be freed from taxation, but, as such change has not been made and I consider myself bound by the decision in the Appellate Division, in Matter of Moses, above referred to, I must affirm the order as to the tax upon this legacy.

[5] The first question presented by the fourth appeal, made by the executors, is as to the provisions of the first paragraph of the will, which is as follows:

"First: I will and direct that my body shall be buried in the Saunders family plot in St. John's Cemetery in the City of Yonkers and if agreeable to and with the consent of my brothers living at the time of my death or the survivor I hereby direct my executors to improve the said family plot by taking down the present headstones at all the graves, leveling the graves in a horizontal position on permanent foundations with the inscription upward and erect a granite block in the center of the plot of such size and design as shall be selected by them and to place a suitable inscription thereon at an expense of substantially but not to exceed five thousand dollars and if this plan shall not prove satisfactory to my brothers or brother as aforesaid, to improve said plot in pursuance of some plan satisfactory to my said brothers or brother paying one-third of the expense not to exceed the sum aforesaid and if no agreement can be effected on the lines above indicated I direct my said executors to erect some suitable marking for my individual grave at a cost not to exceed two hundred dollars."

It is doubtless true that there are decisions authorizing the exemption of a reasonable amount for the purpose of a burial plot, for funeral expenses, and for a monument in keeping with the conditions and circumstances of the particular case, but at the outset in this provision we find that it is not for the purchase of a plot but for the improvement of a plot already owned by the Saunders family, consisting of the testator and his two brothers, each of whom is entitled to a third interest therein. The whole provision depends upon the consent of the brothers of the testator, and provides for changes being made in the plot and the erection of a granite block in the center of the same of such size and design as shall be selected by the brothers at an expense not to exceed $5,000. The affidavit of Leslie M. Saunders verified the 24th of May, 1910, shows that the improvements directed have the sanction of the brothers, and it is their intention to expend substantially the sum of $5,000 in carrying out the same. In case they fail to agree at all as to the improvements, this section provides that $200 should be expended in suitably marking the individual grave of the testator, and the comptroller insists that this should be the limit of the exemption. I would have no hesitation in saying that if the $5,000 provided for was to be expended in erecting markers and a monument upon a plot owned solely by the testator, considering the fact that he left over a $1,000,000 estate and with no immediate family, that it would be an entirely reasonable expenditure

in view of all the circumstances, but as the plot is owned by three, and is as much the plot of one as the other, for which each should pay his proportionate share, I have decided to allow as an exemption from taxation out of this estate one-third of the cost, namely, $1,666.67, which I consider to be fair to all parties; and, even though the whole amount of the improvement should be deducted and taken from this estate, it would not in any way change in my mind the fact that it would be but fair that each one should bear his third, and that, therefore, but one-third should be exempt from taxation. The order appealed from should be modified so as to provide for a deduction of $1,666.67 from the amount of the taxable estate.

[6] As to the second ground of appeal taken by the executors, that they should be allowed commissions to the extent of $22,000 instead of $10,778.50 as provided for in the report of the appraiser, I am at a loss to see any reason why their claim is not well founded. It is based upon the fact that the real estate is to be sold and converted into personalty and their commissions therefor figured upon it. There can be no doubt of this conversion because the fourth clause of the will provides for it in as broad terms as possible, and is as follows:

"Fourth: I give and devise to my executors hereinafter named and to the survivor or successor of them or such as shall act in fee simple and I direct him, it or them to sell at public or private sale in his, its or their discretion and to convey in fee simple and convert into money or securities for money all the real estate or interest therein as well as all the personal property not specifically bequeathed which I shall own at the time of my death. And I will and direct that said real estate shall for legal purposes be deemed converted into personalty as of the time of my death, and that the rents and profits or income thereof from the time of my death until the same shall be sold, shall be part of my personal estate and be received by the executor of this will accordingly. I leave to the discretion of the said executors their survivor or successor the choice of the particular time for making sales of said real estate from time to time."

As before set forth, the personal estate, as found in the appraiser's report, amounts to $586,621.92 and the real estate $487,973.83. For the purposes of claiming the exemption, it should be safe for the state to adopt the figures of their own appraiser, and they are not supposed to be in any way injured by so doing. It is therefore but fair that a commission figured upon the amount of the estate as so fixed should be allowed to the executors and as the estate is over $100,000 each one is entitled to a full commission. Figuring this commission according to statute, it would amount to $10,935.96 for each executor or an allowance of $21,871.92 for both.

I therefore direct that the order heretofore entered be modified so as to allow for the commissions to the executors the said sum of $21,871.92 in place of $10,778.50 as reported by the appraiser.

[7] The last question presented by the executors is whether or not a reasonable sum for brokers' commissions—that is, the amount usually paid for that purpose—shall be allowed as a proper exemption from the estate on the ground that it will be necessarily incurred before the same is settled and closed.

It appears from the affidavit of the executor above referred to, verified May 24, 1910, that the usual commission or charge upon the sale of property in the city of Yonkers is 2½ per cent.; that up to the time of that affidavit 10 parcels of land had already been sold, and that the executors had actually paid commissions amounting to $4,462.46; that in the opinion of the deponent the full amount of $12,200 will have to be expended by the executors for commissions for the sale of the real property prior to the closing of the estate; and that the same is a necessary and reasonable disbursement to be made by the executors.

It appears from the accounting of the executors filed in this court that one piece of property that had been sold was a small parcel of but $4,000 in value upon which the commission to be paid would amount to $100. It is more than reasonable to believe that if out of ten pieces already sold a broker's commission was paid on nine of them, and that the one so sold was a third interest which was conveyed to the other brothers of the testator, and for that reason no commissions were charged, and that the larger properties in which the estate is still interested are yet to be sold, I am satisfied that it is reasonably sure that a commission will be paid upon these sales. It is a usual custom for an executor to employ an agent to make such sales, and I feel that there is no doubt but that it will be done in this case.

Figuring a commission of 2½ per cent. upon the appraised value of the real estate, $487,973.83, gives the sum of $12,199.35. Deducting from this the $100 which would be the commission upon the sale on which no commission was paid leaves $12,099.35, and for the purpose of disposing of this matter I decide that the sum of $12,000 shall be allowed to the executors as a charge necessarily incurred and to be incurred in disposing of the real property of the estate. As considerably over one-third of this amount had already been expended at the time of the filing of the affidavit of July 24, 1910, and as it is reasonably sure that the balance will be paid, I do not consider it unfair, in view of the size of the estate, and the purposes for which it is disposed of, that a reasonable allowance for anything of this kind should be made.

I therefore direct the modification of the order so as to provide for an allowance of $12,000 for this purpose.

An order in accordance with this memorandum will be signed.

Decreed accordingly.