In the Matter of the Transfer Tax upon the Estate of CATHARINE A. DE PEYSTER, Deceased.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; NEW YORK HISTORICAL SOCIETY, Respondent.

**Tax** — transfer tax on bequests to charitable and educational corporations — character and purpose of corporation must be determined from act under or by which it was incorporated — oral testimony inadmissible to show purpose of corporation — bequest to New York Historical Society — when bequest not exempt on ground that society is an educational institution.

1. In order to determine the status of a corporation and to ascertain the purpose for which it was incorporated recourse must be had to the act by which it was incorporated or to its charter and the statute under the authority of which it was framed. Oral testimony that a corporation had undertaken work which was outside of its corporate powers is not admissible to show the object for which it was organized.

2. The statute relative to taxable transfers (Tax Law; Cons. Laws, ch. 60, § 221 as amd. L. 1911, ch. 732, § 1), as it stood at the date of the death of the testatrix, provided for the absolute exemption of bequests to certain associations and corporations, including

educational corporations. It further exempted certain property bequeathed to a corporation or association organized for historical purposes, but this exemption does not cover the bequest in question. The New York Historical Society claims exemption of a bequest as an educational institution. *Held*, that neither its charter (L. 1809; ch. 26) nor by-laws contemplate the carrying on the work of education except as incidental to its express purpose, and that this bequest is not exempt from payment of a transfer tax.

(*Matter of Mergentime*, 195 N. Y. 572; *Matter of Arnot*, 203 N. Y. 627; *Matter of Field*, 147 App. Div. 927, distinguished.)

*Matter of De Peyster*, 156 App. Div. 938, reversed.

(Submitted January 6, 1914; decided February 24, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 16, 1913, affirming an order of the New York County Surrogate's Court which modified a prior order assessing a transfer tax upon the estate of Catharine A. De Peyster, deceased, by exempting therefrom a legacy to the New York Historical Society.

The facts, so far as material, are stated in the opinion.

*Thomas E. Rush, George Thoms* and *Theodore du Moulin* for appellant. The New York Historical Society, as its name implies, was organized exclusively for historical purposes, and such legacy, therefore, is not exempt from taxation under section 221 of the Transfer Tax Act. (*Matter of Moses*, 138 App. Div. 525; *Matter of Mayer*, 209 N. Y. 386; *Matter of Francis*, 189 N. Y. 554; 121 App. Div. 129; *Matter of Watson*, 171 N. Y. 256.)

*Henry A. Miller* and *Arthur Sutherland* for respondent. To determine whether a corporation is an educational corporation within the meaning of that term in the Transfer Tax Act, the court may consider evidence showing the character of the work carried on by the corporation, pursuant to its charter. (*Matter of Moses*, 138 App. Div. 525; *Matter of Field*, 71 Misc. Rep. 396; *Matter of Arnot*, 145 App. Div. 708; 203 N. Y. 627.) The New York Historical Society is exempt from taxa-

tion as an "educational corporation" within the meaning of the Transfer Tax Law, notwithstanding historical corporations, carried on exclusively as such, are only partially exempt from taxation. (*Matter of Mergentime*, 129 App. Div. 367; 195 N. Y. 572; *Matter of Moses*, 138 App. Div. 525; *Matter of Arnot*, 145 App. Div. 708; 203 N. Y. 627; *Matter of Field*, 71 Misc. Rep. 396; *Matter of Historical Society*, 13 Mont. 205; *Essex* v. *Brooks*, 164 Mass. 79; *People ex rel. Trustees* v. *Metzger*, 98 App. Div. 237; 181 N. Y. 511; *Webster* v. *Wright Co.*, 24 L. R. A. [N. S.] 1205; *Cumberland Lodge* v. *Mayor*, etc., 154 S. W. Rep. 1141.)

CHASE, J. Catharine Augusta De Peyster died January 25, 1911, leaving a will by which she bequeathed the residue and principal part of her property to the New York Historical Society. In a transfer tax proceeding and on October 10, 1912, an order was entered in the Surrogate's Court, New York county, assessing a transfer tax against said society in the sum of $50,756.61. An appeal was taken to the surrogate from the order fixing the tax on the express ground "that the said New York Historical Society was incorporated and is maintained exclusively for educational purposes and is an educational corporation within the meaning of section 221 of the Transfer Tax Law and under and by virtue of such section 221 the transfer of the property under the will of the above named decedent to the New York Historical Society is not subject to the payment of a transfer tax." The order fixing the tax was modified so as to exempt said society from such tax and an appeal was taken by the comptroller from the order of the surrogate to the Appellate Division where such order was unanimously, affirmed (*Matter of De Peyster*, 156 App. Div. 938), and an appeal has been taken from such order of affirmance to this court.

The statute as it existed at the date of the death of the

testatrix, upon the construction of which the question involved on this appeal must be determined, provided, so far as material, as follows: "* * * But any property devised or bequeathed for religious ceremonies, observances or commemorative services of or for the deceased donor, or to any person who is a bishop or to any religious, educational, charitable, missionary, benevolent, hospital or infirmary corporation, * * * including corporations organized exclusively for bible or tract purposes shall be exempted, from and not subject to the provisions of this article. There shall also be exempted from and not subject to the provisions of this article personal property other than money or securities bequeathed to a corporation or association * * * organized exclusively for the moral or mental improvement of men or women or for scientific, literary, library, patriotic, cemetery or historical purposes or for the enforcement of laws relating to children or animals or for two or more of such purposes and used exclusively for carrying out one or more of such purposes." (Tax Law [Consolidated Laws, chapter 60], section 221, as amended, L. 1911, ch. 732, section 1.)

If the respondent is organized exclusively for historical purposes, the bequest of the testatrix not being personal property other than money or securities, is subject to the transfer tax. If it is an educational corporation within the meaning of the statute it is exempt from such tax. In order to determine the status of a corporation and to ascertain the purposes for which it was incorporated recourse must be had to the act by which it was incorporated or to its charter and the statute under the authority of which it was framed. (*Matter of Watson*, 171 N. Y. 256; *Matter of White*, 118 App. Div. 869, 870; *Matter of Moses*, 138 App. Div. 525.)

This court in *People ex rel. Wall & H. St. R. Co.* v. *Miller* (181 N. Y. 328, 334), in considering the charter of a corporation and the business done under its charter and the relations of the corporation to the state, say:

" And when we appeal to the reason of the thing it seems plain that the chartered privileges of a corporation as defined in its certificate of incorporation, which is invariably framed in the language of the corporators, should be the index to its relations to the state, rather than the possibly sporadic and shifting exercise of any one or more of a larger number of the powers delegated to it."

In *Matter of Mergentime* (129 App. Div. 367, 374; affirmed on opinion below, 195 N. Y. 572) the court say: " As this corporation was established by a special charter and not incorporated under a general law, the question as to the nature of the corporation must be determined by the objects specified by the legislature as those for which it was incorporated."

The respondent was organized by special charter (Laws of 1809, chapter 26), entitled " An act to incorporate the New York Historical Society." The act recites that the persons named therein and others have formed themselves into an association " for the purpose of discovering, procuring and preserving whatever may relate to the natural, civil, literary and ecclesiastical history of the United States in general and of this state in particular," and have petitioned to be incorporated " that thereby such, the purpose and design of the said society may be the more effectually subserved and promoted."

The act also provides that the society shall " have power from time to time to make, constitute, ordain and establish such constitutions, by-laws, ordinances and regulations as they shall judge proper for * * * conducting, regulating and managing all the affairs and business of the said corporation. * * *." In pursuance of such charter provision the following by-law was adopted: " The object of the society is to discover, procure, and preserve whatever may relate to the natural, civil, literary and ecclesiastical history of the United States in general and to this state in particular. Also to establish and maintain collections in art and archaeology."

The act is declared to be a public act and it provides that it "shall be construed most favorable to subserve and promote the purpose and design of the said society."

A corporation or association organized exclusively for scientific, literary, library, patriotic or historical purposes, or for any one of such purposes, is necessarily to some extent educational in its nature, and in the results attained from such organization. An exclusively historical society does not gather books, manuscripts, pictures and antiquities simply to hoard them. Its purpose is not alone to discover and preserve things and facts of historical value, but to keep and record them that they may be seen, read and studied, that greater knowledge may be attained from them. The legislature in including educational corporations or associations in the first part of the statute quoted, intended corporations or associations engaged in something more than the incidental education which is necessarily derived from corporations organized exclusively for scientific, literary, library, patriotic or historical purposes.

If the legislature had not intended to distinguish between an educational corporation or association as such, and a corporation or association in which education is simply incidental to, or results from the work of a corporation or association organized for historical and other named purposes, there would have been no reason for deliberately and intentionally placing them in separate groups in the same section of the statute and generally exempting the first group from all tax on transfers, and only exempting the last group from transfers of personal property other than money or securities.

The respondent's name is significant of its purpose. Neither the charter nor the by-laws of the respondent contemplate carrying on the work of education except as the same is incidental to its express purpose. The purpose of the corporation as stated in the act of incorporation and its by-laws is clear and unambiguous. In a proceeding of this kind it is only for the purpose of determining the

character of the work undertaken pursuant to the powers expressly given to a corporation by its charter or act of incorporation that oral testimony can be given. Oral testimony should not be received simply to show that a corporation had undertaken work that was outside of its corporate powers. It was quite unnecessary in this case for the purpose of construing the act of incorporation to inquire what had been done under it by its incorporators. Its purpose, as expressed, needs no explanation or interpretation. It matters not that in carrying out the exclusively historical purpose expressed in the act itself, incorporators and patrons are educated in historical and allied subjects because such incidental education derived from it does not make the express purpose of the association as shown by the act by which it was organized any the less exclusively historical.

Even if we take the testimony on which the respondent relies in claiming that it is an educational corporation, it will be seen that the society maintains its exclusively historical character, and that education is merely incidental to such character. The testimony on which it relies may be summarized as follows: It owns and occupies a fine building in Central Park West, in the borough of Manhattan, city of New York, in which it has a library containing 119,238 volumes and 119,963 separate pamphlets especially rich in materials relating to American history; a collection of county and local history, biography and genealogy; a gallery of paintings, including many old masters; a gallery of water colors of rare and intrinsic value; a department including antiquities embracing famous collections; original manuscripts covering the colonial and revolutionary periods; orderly books of the War of the Revolution and manuscript collections of later periods, and a fine collection of old New York prints and views. All of such books, pamphlets, paintings, drawings, antiquities, original manuscripts, prints and views are available to students and the public

under rules and regulations of the society. The society also gives illustrated lectures; those delivered during the year 1911 were entitled "New York Prints;" "Aaron Burr, Soldier and Statesman;" "Early History of the Yosemite Valley;" "The Lewis and Clark Expedition to the Pacific Ocean;" "Our Navy in Time of Peace;" "The Rocky Mountains of Canada;" "The Spanish-American Invasion of the Philippine Islands," and "Travel Talk on South America." By its work as thus narrated the society is carrying out its purpose as an historical society.

A reference to the cases principally relied upon by the respondent to show that it is an educational corporation and not exclusively an historical corporation or association will show that they are clearly distinguishable from this case. In *Matter of Mergentime* (*supra*) a legacy was given to the Metropolitan Museum of Art. The said museum of art was incorporated by the legislature "for the purpose of establishing and maintaining in said city [New York] a museum and library of art, of encouraging and developing the study of fine arts and the application of arts to manufacture and practical life, of advancing the general knowledge of kindred subjects and to that end of furnishing popular instruction and recreation." It appeared affirmatively that the said museum was carrying out the purposes expressly given to it by furnishing popular instruction, and it was exempt from the transfer tax on the legacy.

In *Matter of Arnot* (71 Misc. Rep. 390; affirmed, 145 App. Div. 708; affirmed, 203 N. Y. 627) the court considered the question whether a transfer tax should be assessed upon a gift by the testator to a corporation to be formed by his executors to be known as the "Arnot Art Gallery" for the purposes defined in the will of said testator, and which purposes are expressed in the special act of the legislature for the incorporation of the Arnot Art Gallery (Laws of 1911, chap. 17, section 3) as follows:

" The purposes and objects of said corporation are under the said last will and testament and hereunder, to receive, maintain, perpetuate and add to, in the city of Elmira, in the county of Chemung, and state of New York, and at the residence of said Matthias H. Arnot while living, the collection of objects of art, the books and the property bequeathed to said corporation by said last will and testament, to establish, maintain and add to a gallery and museum of objects of educational, artistic, historic or literary character and value, to establish, maintain and add to a reference library and reading room, to all of which the public shall have, under reasonable rules and regulations, free access, to encourage and develop the study of the fine arts and kindred subjects and advance the general knowledge thereof and to that end to furnish free popular instruction in relation thereto; to fulfill the purposes of said corporation as stated in said last will and testament."

The purposes of the corporation so organized to carry out the provisions of the will of the testator are educational, as expressly stated in the act itself, and the court so held, and sustained the order of the surrogate exempting the property so given from the transfer tax.

In *Matter of Field* (71 Misc. Rep. 396, 397; affirmed, 147 App. Div. 927) the court considered a bequest to the Woman's Christian Temperance Union of the state of New York. It appeared that the union was incorporated and that the articles of incorporation defined its purposes as follows: "The objects of such society or association shall be to promote throughout the state the cause of total abstinence from all intoxicating liquors as a beverage and suppression of the liquor traffic *by such means as shall from time to time be deemed wise and expedient.*" It also appeared that among other means used for carrying out the educational purposes of the association it carried on a distinctly educational work in the public schools of the state.

The underlying reasons apart from the statute for

exempting the Metropolitan Museum of Art and the Arnot Art Gallery from the payment of a transfer tax on money and securities as well as other personal property would seem to apply with equal force to the New York Historical Society, but when an act of the legislature is expressed in clear language it is the duty of the courts to enforce such act in accordance with the letter of the statute. The responsibility for the result is with the legislature and not with the courts.

The orders of the Surrogate's Court and of the Appellate Division exempting the respondent from the transfer tax should be reversed and the original order of the surrogate, dated October 9, 1912, affirmed, with costs in this court and in the Appellate Division.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Ordered accordingly.