HUDSON AND MANHATTAN RAILROAD COMPANY, Appellant, *v.* STATE OF NEW YORK, Respondent.

**Transfer tax — agreement for re-adjustment of debts of corporation and transfers to and from voting trustees — when one, only, of transfers made for and in pursuance of such agreement subject to the transfer tax.**

The stock of a railroad company was delivered by the stockholders to voting trustees who delivered to each of the stockholders their certificate entitling him at the expiration of the trust agreement to a retransfer of his shares. Thereafter, and for the purpose of re-adjusting the debts of the company, an agreement was made between certain banks, as " managers," a trust company as " depositary " and the stockholders and bondholders as " depositors." After the re-adjustment was accomplished the voting trust certificates were surrendered to the first named voting trustees who issued new certificates and delivered them to new voting trustees who issued the usual certificates. *Held*, upon examination of the agreements and the

facts that, for the purposes of a transfer tax, there was only a single transfer of the shares of stock and hence only one of the transfers made under the trust agreement is liable to tax under section 270 of the Tax Law.

*Hudson & Manhattan R. R. Co.* v. *State*, 180 App. Div. 81, reversed.

(Argued October 22, 1919; decided November 18, 1919.)

APPEAL from a judgment entered December 18, 1917, upon an order of the Appellate Division of the Supreme Court in the third judicial department, which reversed an award of the Board of Claims in favor of plaintiff and directed a dismissal of its claim.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*J. Howland Auchincloss* and *Lansing P. Reed* for appellant. Only one transfer took place upon the transaction by which the voting trust certificates were surrendered to the old voting trustees for cancellation and the legal title to the stock transferred by the old voting trustees to the new voting trustees. (L. 1913, ch. 779, § 270; *Bonbright & Co.* v. *State of New York*, 165 App. Div. 640.)

*Charles D. Newton*, Attorney-General (*Claude T. Dawes* of counsel), for respondent. Two transfers of the legal title to the stock are evidenced by the making out of certificates of stock in the name of the trustees of the new voting trust. The legal title first passed from the old voting trustees to the managers and was then transferred by the managers to the trustees of the new voting trust. (*Travis* v. *Ann Arbor Co.*, 180 App. Div. 799.)

COLLIN, J. The Court of Claims awarded the plaintiff, a domestic corporation, the recovery of the sum of two thousand five hundred forty-five dollars and forty-two cents on account of stamps in that amount erroneously affixed by it to transferred shares of stock. The

Appellate Division reversed the award and the consequent judgment and dismissed the claim.

The stamps were affixed in virtue of the statute: " There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on all sales, or agreements to sell, or memoranda of sales of stock, and upon any and all deliveries or transfers of shares or certificates of stock, in any domestic or foreign association, company or corporation, made after the first day of June, nineteen hundred and five, whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock, or merely with the possession or use thereof for any purpose, or to secure the future payment of money, or the future transfer of any stock, on each hundred dollars of face value or fraction thereof, two cents, except in cases where the shares or certificates of stock are issued without designated monetary value, in which cases the tax shall be at the rate of two cents for each and every share of such stock. It shall be the duty of the person or persons making or effectuating the sale or transfer to procure, affix and cancel the stamps and pay the tax provided by this article. * * *." (Tax Law [Cons. Laws, chapter 60], section 270.) The authorization of the action is found in the statute. (Section 280.)

The question to be determined reaches back to the year 1908 and to a voting trust agreement between the holders of certain shares of the common stock of the plaintiff and three individuals as voting trustees. In virtue of the agreement the shares were transferred to the voting trustees, who delivered to each of the transferers their voting trust certificate as to the shares transferred by him, entitling him, as the holder of the certificate, on

June 15, 1913 (the expiration of the agreement), to a retransfer of his shares, and, in the meantime, to receive payments equal to the dividends, if any, collected by them. The present appeal concerns only the subsequent transactions in regard to the shares of stock, as hereinafter stated, against which the voting trust certificates were issued. In January, 1913, the indebtedness of the plaintiff required readjusting, and it came to pass that an elaborate and involved agreement in writing, dated January 14, 1913, concerning the outstanding mortgage bonds and stock of the plaintiff and the voting trust certificates, was entered into between three banking houses as "managers," the Guaranty Trust Company of New York as "depositary," holders of mortgage bonds and holders of the preferred and common stock of the plaintiff, including the holders of the voting trust certificates, as "Depositors." The agreement contemplated and made provision, among many other things, that upon each share of stock which became subject to the agreement the sum of eight dollars and fifty cents should be paid and the paying shareholders should receive a newly-issued bond of specified denomination; that the depositors should deposit their holdings of bonds, or stock or voting trust certificates, duly indorsed for purposes of transfer to the managers, with, and receive from, the depositary proper certificates evidencing the deposits; the managers were empowered to secure the termination of the voting trust of 1908 and the return and deposit of the stock certificates prior to the agreed termination and return; the voting trust certificates and the shares of stock deposited were to be held in escrow by the depositary; the managers were empowered to procure and accept, for the purposes of the readjustment, the transfer to them of the shares of stock and the voting trust certificates held by the depositary, through and by filing with the depositary a certified copy of a resolution adopted by them stating their acceptance thereof, whereupon the

title to the shares and certificates should vest in the managers, who shall thereupon be and become the owners and holders thereof, and which, thereafter, shall be held by the depositary subject to the order of the managers. Meanwhile, and until the filing of such certified resolution, the depositors shall, subject as aforesaid, be deemed to retain, and shall have, the ownership of, and title to, their respective bonds and stock, and " the Depositary shall dispose of the deposited bonds and stock of the Company in such manner as the Managers or a majority thereof may from time to time direct, * * *; " the managers were further empowered to cause the formation of the new voting trust contemplated by the plan, or a different voting trust, under a voting trust agreement containing such terms and provisions as the managers shall prescribe, and cause the deposited stock of the company to be transferred to such trustee, to be held upon the terms of such voting trust agreement, and cause voting trust certificates of such form and tenor as the managers may prescribe to be issued in exchange for such stock. The agreement discloses a comprehensive plan for the readjustment of the financial obligations of the company, promulgated and to be executed by the bankers-managers without intention to vest in them any interest or title in the shares of stock or voting trust certificates to any extent or purpose not requisite to the execution of the plan. Broad and flexible powers were given the managers, among which was that of carrying out and effectuating the agreement and plan not only in the manner specified in the agreement, but in whatever lawful manner might seem to them expedient and for the best interests of the depositors or likely to accomplish in substance the results contemplated by the plan.

The relevant actual transactions were: the readjustment was accomplished. In the process the voting trust certificates of 1908 were deposited with the depositary of the agreement of January 14, 1913, and on August 21,

1913, a new voting trust agreement was entered into between the owners of the voting trust certificates of 1908 and three persons, Felix M. Warburg, Charles Francis Adams, 2nd, and Albert H. Wiggin, as voting trustees. On August 25, 1913, the depositary, " acting for the Managers," surrendered to the voting trustees of 1908 the voting trust certificates issued by them and requested them " to issue a certificate of the stock, to the return of which the holders of said voting certificates are entitled under the terms of said agreement (of 1908) on such surrender (of the voting trust certificates), in the name of ' Felix M. Warburg, Charles Francis Adams, 2nd, and Albert H. Wiggin, Voting Trustees under an agreement dated August · 21, 1913,' and to deliver the certificate so issued to Harvey Fisk & Sons, No. 62 Cedar Street, New York City, the Agents of said Voting Trustees." Pursuant to this request the voting trustees of 1908 forthwith transferred in the usual and due course or manner the shares of stock to the voting trustees of August, 1913, and the plaintiff caused two sets of transfer tax stamps for each share to be affixed to the stock certificates surrendered by the voting trustees of 1908 to it. The new voting trustees issued the usual voting trust certificates. We are to determine whether or not, in virtue of the stated facts, the two sets of stamps, rather than one, were required by the statute we have given.

The attorney-general, in behalf of the State, asserts: the legal title to the shares of stock was vested in the voting trustees of 1908 by the agreement of that year and remained in them until transferred by them to the voting trustees under the agreement of August, 1913; the beneficial title or interest never, in the course of the stated transactions, left the holders of the voting trust certificates, who were the same persons under the two voting trust agreements; this appeal involves only the passing or transfer of the legal title to the shares of stock; the agreement of January 14, 1913, contemplated

that when the managers so chose the legal title, or the right to regain the legal title, to the stock should vest in the managers. The attorney-general then asserts that the request of August 25, 1913, of the depositary, acting for the managers, upon the trustees of 1908, already stated by us, was, in legal effect, the regaining by the managers of the legal title to the shares plus a transfer of that legal title by the managers, after regaining it, to the new voting trustees under an entirely separate and new voting trust. The reasoning of the attorney-general is: whatever legal title to the shares the new trustees got came from the managers and not from the old trustees, because the managers, possessing the right under the agreement of January 14, 1913, alone could direct and empower the old trustees to convey to the new trustees; the title could not pass directly from the old voting trustees to the new; a necessary element in the passing of the title was the regaining from the old trustees by the stockholders or their representatives, the managers, the title; thus the legal title passed twice, once from the old trustees to the managers and the second time from the managers to the new trustees.

The reasoning is erroneous and gives no support to the assertion sought to be based upon it. In fact, as in form, there was a single transfer of the shares of stock. The agreement of January 14, 1913, did not effect a transfer or an agreement of transfer of the shares, or a certificate of any of them. Its only effect upon the ownership of or title to the stock was the creation to the managers of the privilege, exercisable upon a contingency, of acquiring the stock, or of the right to direct such other disposition of it as, in their judgment, the successful execution of the readjustment plan demanded. The privilege of acquisition the managers never exercised. They did not acquire ownership of the shares or of a certificate of shares. They did exercise the right to direct the transfer of the legal title to the shares, that

is, the transfer by the old trustees to the new trustees. The ownership or interest of the holders of the voting trust certificates remained, for the purposes of our consideration, untransferred and unchanged. The right in the managers to direct the transfer of the stock did not include, was not dependent upon, and, under the circumstances, had no relation to the taking by the managers of the title to the stock. The title could be transferred, under lawful authority, from the old trustees to the new trustees as legally as it could be transferred from the former to the managers. Authorization existing, the new trustees could regain the title from the old trustees as effectually and lawfully as could the managers. Neither in law nor through the facts was there need or reason for passing the title to the new trustees through the managers. The power to direct the transfer to the new trustees did exist in the managers through the agreement of January 14, 1913. As we have already said, that power was not the equivalent of a vesting in them of the legal title to the stock nor did it necessitate, through implication or otherwise, such vesting.

The judgment of the Appellate Division should be reversed and the determination and judgment of the Court of Claims affirmed, with costs in the Appellate Division and this court.

HISCOCK, Ch. J., CHASE, CARDOZO, CRANE and ANDREWS, JJ., concur; HOGAN, J., not voting.

Judgment reversed, etc.