EUGENE M. TRAVIS, as Comptroller of the State of New York, Plaintiff, *v.* AMERICAN CITIES COMPANY and Others, Defendants.

First Department, May 14, 1920.

Taxation — when transfer of securities to insure performance of obligations of trust mortgage not taxable — transfer of legal title not inconsistent with pledge — Tax Law, section 270, construed — statutes — rules of construction — intent of Legislature.

Where a corporation desiring to issue bonds executed a trust mortgage and thereunder deposited with the trustee certain stocks of other corporations as security for the payment of the principal and interest of bonds to be issued or outstanding, etc., and by the terms of the pledge the pledgor was entitled to receive dividends declared upon said stock, to

vote upon the same and to sell the same if not in default under the mortgage, the transfer to the trustee is not taxable under the provisions of section 270 of the Tax Law, especially as the statute specifically provides that it is not intended to impose a tax upon a deposit of stock certificates as collateral security for money loaned.

Intent and purpose of section 270 of the Tax Law stated.

The transfer of the legal title to such stock is not inconsistent with the pledge thereof as collateral security.

In determining the intention of the Legislature which controls in the construction of a statute the court may consider the history of the legislation.

The statute levying such tax should be construed most liberally to the taxpayer.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*C. T. Dawes, Deputy Attorney-General,* of counsel [*Charles D. Newton, Attorney-General*], for the plaintiff.

*Morton G. Bogue* of counsel [*Stephen P. Anderton* and *Edward K. Hanlon* with him on the brief; *Beekman, Menken & Griscom,* attorneys], for the defendants American Cities Company and The United Gas and Electric Corporation.

*R. S. Coutant* of counsel [*Stetson, Jennings & Russell,* attorneys], for the defendant Guaranty Trust Company of New York.

*A. H. Cowie* of counsel to New York State Trust Companies Association.

MERRELL, J.:

This is a submission of a controversy pursuant to the provisions of sections 1279–1281 of the Code of Civil Procedure. The plaintiff sues as Comptroller of the State of New York. The defendant American Cities Company is a foreign corporation organized and existing under and by virtue of the laws of the State of New Jersey, having its principal office and place of business at the city of Jersey City, N. J. Its business consists of the purchase, ownership and disposition of stocks and securities of other companies. The defendant The United Gas and Electric Corporation is a foreign corporation organized and existing under and by virtue of the laws of the State of Connecticut, and having its principal office and place of

First Department, May, 1920.          [Vol. 192.

business in the city of Hartford, Conn. The business of the last-named corporation consists of the purchase, ownership and disposition of stocks and securities of other companies. The defendant Guaranty Trust Company of New York is a domestic corporation organized and existing under and by virtue of the laws of the State of New York, having its principal office and conducting the business of a trust company at the city of New York.

In the year 1915 the defendant The United Gas and Electric Corporation desired to issue $15,000,000 of coupon bonds, and under date of April first of that year the said defendant executed to the Guaranty Trust Company of New York an indenture in writing describing said issue of bonds of said company limited in the aggregate sum of $15,000,000. By the terms of said indenture it was provided, among other things, for the deposit and pledge with and transfer, upon the terms and conditions therein mentioned, to the defendant Guaranty Trust Company of New York, as trustee, by the said The United Gas and Electric Corporation, shares of the capital stock of various named corporations, including 155,260 shares of the common stock of the defendant American Cities Company, said last-mentioned company having a transfer agent in the city of New York where the stock of said company might be transferred. Such deposit, pledge and transfer of said shares of stock of the defendant American Cities Company was made by the defendant The United Gas and Electric Corporation as security for the payment of the principal and interest of the bonds at any time issued and outstanding under said indenture and to insure the faithful performance and observance of the covenants, agreements, stipulations and conditions contained in said indenture for the protection and security of the agreements contained in the bonds issued thereunder.

Pursuant to said indenture the defendant The United Gas and Electric Corporation delivered to the defendant Guaranty Trust Company of New York the said 155,260 shares of the common stock of the defendant American Cities Company to be held by the said trust company as provided by said indenture. Thereafter, and as a part of and incident to such deposit of said security, the defendant Guaranty Trust Com-

pany of New York caused said stock to be transferred into its name as trustee. The defendant Guaranty Trust Company of New York has èver since held said shares of stock under and by virtue of the terms of said indenture and not otherwise. The granting clause of the indenture is in the following form: " * * *  the Corporation, the party hereto of the first part, has executed and delivered this indenture and has granted, bargained, sold, aliened, remised, released, conveyed, confirmed, pledged, assigned, transferred, set over and delivered, and by these presents does grant, bargain, sell, alien, remise, release, convey, confirm, pledge, assign, transfer, set over and deliver unto the Trustee, its successors in the trust hereby created and its and their assigns, the following securities and properties (hereinafter sometimes called collectively the ' pledged securities '), to wit: [Here follows description and list of securities pledged.] "

From the above-quoted clause the nature of the transaction is clearly revealed. The indenture does not disclose any intent or purpose to transfer to the defendant Guaranty Trust Company said shares of stock other than as collateral security for the payment to the purchasers of the bonds of the moneys loaned to the said The United Gas and Electric Corporation thereunder. Nowhere in said indenture is there revealed any purpose or intention to confer upon the Guaranty Trust Company of New York any beneficial or equitable interest or ownership in the said shares of stock of the American Cities Company held by said trust company pursuant to the terms of said indenture. Throughout the indenture the plain purpose and intent of the parties was that the pledgor of the shares of stock in question should at all times remain and be the beneficial owner of said stock, subject to its deposit and transfer with the defendant Guaranty Trust Company of New York for the protection of the purchasers of the bonds of the pledgor. The indenture is replete with evidences of the intention of the parties that The United Gas and Electric Corporation, the pledgor of said shares, was to retain the beneficial ownership thereof. It was provided that sufficient shares of each of the underlying companies whose stock was pledged to the trust company under said indenture as might be required to qualify directors in each of said underlying

companies should be retained and withheld from the pledge. The pledgor was required to take all necessary action as a stockholder of the underlying companies, including the American Cities Company, to protect and conserve the assets of said underlying companies and thereby protect and conserve the capital stock pledged as security under said indenture. Under the terms of the indenture the Guaranty Trust Company of New York was required to file with the various companies whose capital stock had been pledged with said trust company, assignments or standing orders to pay over to the pledgor all dividends which might from time to time be declared by such companies, and that the pledgor should call and receipt for said dividends, unless there was default or failure on the part of the United Gas and Electric Corporation to perform its covenents under the indenture. The pledgor, by the terms of the indenture, was authorized to vote upon all of the shares of stock deposited thereunder " at any general or special meeting of the stockholders of any of said companies to the same extent and with the same effect as if the transfers of said stock and this indenture had not been made." The indenture further permitted the pledgor, with the approval of the trustee, to sell or contract to sell the securities pledged by it as long as the pledgor was not in default under the indenture. The indenture further provided for the foreclosure by the trustee of the securities pledged in the event of the default of the United Gas and Electric Corporation, and upon such foreclosure the surplus arising therefrom, after payment of the costs, expenses, compensation of the trustee, and the whole amount of the principal and interest upon the bonds, was to be paid to the pledgor, The United Gas and Electric Corporation. The pledgor appointed the trustee its attorney-in-fact to make the necessary transfers of securities sold upon foreclosure, thus evidencing the necessity of such provision to enable the due and effective transfer of said securities. Finally, the indenture provides that when and if the corporation shall have kept and performed all the things required thereby to be done by the corporation, " then and in that case all securities, property, rights and interests hereby conveyed or pledged shall revert to the corporation, and the estate, rights, title and interest

of the trustee shall thereupon cease, determine and become void, and the trustee, in such case, on demand of the corporation and at its cost and expense, without further action on the part of the corporation, shall assign, transfer and deliver to the corporation * * ·* all capital stock, bonds, notes and other evidences of indebtedness and all moneys or other property at the time held by the trustee hereunder * * *," thus clearly indicating that the shares in question were delivered to the trustee merely as collateral security for the payment of moneys advanced by the bondholders to the corporation. Throughout the indenture the shares of stock of the various underlying companies are referred to as " pledged."

The question presented by the submission of the parties is whether the transfer by the defendant The United Gas and Electric Corporation to the defendant Guaranty Trust Company of New York of the 155,260 shares of the common stock of the American Cities Company, under the terms of the said indenture, is a taxable stock transfer within the provisions of section 270 of the Tax Law of the State of New York. Said section 270 (added by Laws of 1910, chap. 38, as amd. by Laws of 1911, chap. 352; Laws of 1912, chap. 292, and Laws of 1913, chap. 779) provides as follows:

" § 270. Amount of tax. There is hereby imposed and shall immediately accrue and be collected a tax, as herein provided, on all sales, or agreements to sell, or memoranda of sales of stock, and upon any and all deliveries or transfers of shares or certificates of stock, in any domestic or foreign association, company or corporation, made after the first day of June, nineteen hundred and five, whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock, or merely with the possession or use thereof for any purpose, or to secure the future payment of money, or the future transfer of any stock, on each hundred dollars of face value or fraction thereof, two cents, except in cases where the shares or certificates of stock are issued without designated monetary value, in which cases the tax shall be

First Department, May, 1920.                    [Vol. 192.

at the rate of two cents for each and every share of such stock. . * * * "

It is the contention of the Comptroller that the transfer by the defendant The United Gas and Electric Corporation to the defendant Guaranty Trust Company of New York of the 155,260 shares of the common stock of the American Cities Company was a transfer within the contemplation of said section 270 of the Tax Law as requiring the payment to the State of the tax provided by said law. It is claimed by the Comptroller that the transfer of the said shares invested the Guaranty Trust Company at least with the possession and use of said stock for some purpose. As before stated, I do not think such transfer invested the holder with any beneficial interest in or legal title to said stock. It might perhaps be said that nevertheless possession of said shares was delivered to the trust company for some purpose within the contemplation of the statute above quoted, were it not for the further provision of said law limiting its application in the following terms: " It is not intended by this act to impose a tax upon an agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon, which stock certificates are not actually sold, nor upon such stock certificates so deposited, nor upon mere loans of stock or the return thereof."

It is not unusual for long-time loans to be effected through bond issues secured by trust mortgages as in the case at bar. Such indentures or mortgages necessarily are to secure the future payment of money, but under the provision of the statute last above quoted no tax is due under an agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon, which stock certificates are not actually sold, nor upon such stock certificates so deposited. It seems to me that the transaction between the United Gas and Electric Corporation and the Guaranty Trust Company of New York was clearly one contemplated by the Legislature, and that upon such a transfer no tax is to be imposed. The stock certificates delivered to the trustee under said indenture were " for the deposit and pledge with " the trustee. Undoubtedly the actual deposit and pledge with the trustee of said shares of stock as collateral security would

have been effective upon delivery even in the absence of a formal transfer of said shares to the trustee. Such transfer was merely to facilitate and perfect the deposit, and to enable the trustee to handle and control the same. In the earlier part of the statute the word " deposit " is not used, but simply the words, " deliveries or transfers of shares " in conjunction with " sales, or agreements to sell, or memoranda of sales of stock." The real essence of the transaction was the deposit under the indenture of mortgage, and not a delivery or transfer for any other purpose. I think, fairly interpreted, the statute was designed to tax actual sales and transfers of stock, and not mere deposits thereof by way of mortgage or as collateral security. Thus under the provision of the statute exempting from its application deposits of stock certificates as collateral security for money loaned thereon, said stock certificates not being sold, the Legislature clearly evidenced the intention not to bring within the operation of the statute such deposits as collateral security. That within the provision of said law the stock certificates of the American Cities Company were not " actually sold " is plain from the provision of the trust mortgage conferring upon the pledgor itself the right to make future sales or contracts to sell said shares. Under the declaration of the statute as to its intent, the " agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon," necessarily would require the actual transfer of such certificates of stock " to secure the future payment of money," yet unless actually sold the stock certificates would not be taxable.

Under the terms of the indenture herein The United Gas and Electric Corporation desired to borrow $15,000,000. For this purpose it purposed to issue its coupon bonds not exceeding that amount. The Guaranty Trust Company of New York agreed to serve as trustee, and to secure the payment of the said bonds and obligations of the gas and electric corporation, the latter deposited with its said trustee various securities, including the said shares of stock of the American Cities Company. Such deposit was clearly for the purpose of furnishing collateral security for money loaned the said gas and electric corporation by the purchasers of said bonds. Under the terms of the indenture the trustee, in case of

default, was authorized to foreclose the said mortgage and to dispose of said shares of stock, thus pledged as collateral security, at public vendue, and to pay the bondholders who had loaned their money upon such security the amount due upon said bonds for principal and interest. Any amount remaining from the proceeds of the sale made upon foreclosure and sale of the property thus pledged after payment of costs, expenses, compensation of the trustee, and the entire amount of principal and interest owing or unpaid upon said bonds was, under the terms of said indenture, to be returned to the gas and electric corporation. It is plain that under such provisions of the mortgage the deposit of the stock certificates was only as collateral security for money loaned. Section 270 of the Tax Law as a whole seems to me to indicate a legislative intent to impose a tax only upon actual sales and transfers of stock. The act, first, imposes a tax upon all sales and transfers of stock, and thereafter expresses an intention on the part of the Legislature not to tax stock certificates which have been deposited " as collateral security for money loaned thereon," qualifying it later by the expression, " which stock certificates are not actually sold." The previous provision of the law as to sales or transfers is not followed in the exemption provisions. The latter provision exempts all deposits of stock made as collateral security, provided only that there is no actual sale.

The Comptroller contends that a stock transfer tax became due on the transfer of the legal title of the shares in question to the Guaranty Trust Company, but the Legislature in the exemption clause does not use the term " transfer." Therefore, it is apparent that " sale " and " transfer " must be taken to mean different things. There can be no question as to the precise meaning of the word " sale," which imports not only transfer of title, but also the passage of property rights and the severance of all right and control thereof on the part of the seller. In Jones on Collateral Securities (3d ed. § 153) it is said: " A transfer of the legal title is not inconsistent with the existence of a pledge. On the contrary, it is true that incorporeal property, being incapable of manual delivery, cannot generally be pledged without a written transfer of title. Collateral securities, such as negotiable

instruments, stocks in incorporated companies and choses in action, generally are pledged in this mode."

It would, therefore, seem that the transfer of title to the shares of stock in question was not inconsistent with their pledge, as collateral security. There are many decisions of our courts that although a transfer of corporate stock be made, absolute in form, nevertheless the transaction amounted merely to a pledge of the stock in case the stock was to be held as collateral security. (*Wilson* v. *Little,* 2 N. Y. 443; *McMahon* v. *Macy,* 51 id. 155; *Town of Mt. Morris* v. *Thomas,* 158 id. 450.)

Under the indenture between the parties, it seems to me clear that there was no actual sale or intention to sell or transfer any beneficial interest in the shares in question to the trustee, and that the beneficial and equitable title to said shares at all times remained in the pledgor, subject, however, to the latter's being foreclosed of such title in case of default in performance of its agreement.

Much light is thrown upon the legislative intent in the enactment and continuance upon the statute books of the exemption provision of said law by an attempt in the year 1913 to amend the same. A bill was introduced in the Legislature of that year to amend said section 270 by inserting therein in the exemption clause after the words, " which stock certificates are not actually sold," the words, " or transferred." Had the amendment become a law the exemption clause of the section would have read as follows: " It is not intended by this act to impose a tax upon an agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon, which stock certificates are not actually sold *or transferred,* nor upon such stock certificates so deposited nor upon mere loans of stock or the return thereof." (See N. Y. Assembly Bills, 1913, Vols. 9, 13, Nos. 2230, 2767; N. Y. Senate Bills, 1913, Vols. 8–11, Nos. 1800, 2150, 2244, 2441, 2525.)

There was opposition to the proposed amendment, and to the insertion in the statute of the words " or transferred," and a letter, a copy of which is annexed to the submission herein, was addressed to the Comptroller of the State of New York, protesting against said amendment upon the ground that it was the frequent practice of banks and trust

companies to require a formal transfer of stock pledged as collateral security, and that if a tax was to be required upon stock transferred, as the amendment would seem to require, a double tax would necessarily result, as a tax would be imposed upon the transfer of the shares to the bank or trust company and in case of payment of the loan, for the payment of which the shares were delivered as collateral security, the shares would have to be transferred back to the owner and a second tax paid upon such retransfer. The letter addressed to the Comptroller also objected to the proposed amendment from the standpoint of the trustee where stock was pledged with a trustee under corporate agreement securing issues of bonds or notes. It was stated in the letter that under the practice stocks were physically deposited with the trustee named in the agreement of pledge. In many cases the stock was required to be transferred to the trustee during the life of the loan evidenced by the note or bond issue, and that such was the proper practice and was growing in favor. It was suggested to the Comptroller that sound business principles required that nothing should be done to discourage the extension of such practice; that such transfer in nowise amplified the title to the pledge, but merely gave to the pledgee a greater control of the subject of the pledge, and made for the protection of the holders of the bonds and notes secured by the pledge of stocks; that the placing of the stock collateral in the name of the pledgee simply tightened the grip on the collateral without in any way adding to his title; that the pledgor still retained his interest in the collateral and was entitled to an accounting not only for the actual property pledged, but also to its income and profits and dividends. The said letter further urged upon the Comptroller that if a tax were required to be paid upon such transfers it would place the New York banking institutions and trust companies at a great disadvantage with competitors in other States, and would discourage and drive away from the State of New York such business. This letter was signed by three leading firms of attorneys in the city of New York, and when brought to the attention of the Comptroller, the latter recommended to the Legislature that the words " or transferred," proposed to be incorporated in the statute, be omitted

therefrom. The Legislature followed the recommendation of the Comptroller, and the words " or transferred " did not become a part of the statute. These facts appear in the submission of controversy, and are admitted by the parties. It seems to me that the history of the legislation as revealed by the letter to the Comptroller, his advice to the Legislature, and the latter's acceptance thereof indicate clearly that the Legislature did not intend that mere transfers of stock as collateral security should be subject to tax. The law is well settled that in interpreting a statute the history of its enactment is of importance (*Woollcott* v. *Shubert*, 217 N. Y. 212), and that all the facts and circumstances concerning the enactment of the statute and its attempted amendment are properly to be considered in its interpretation.

The intent of the Legislature should control, even though the letter of the statute may be contrary to such intent. As was said by EARL, J., in *Riggs* v. *Palmer* (115 N. Y. 506, 509): " It is a familiar canon of construction that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." (See, also, *Matter of Meyer*, 209 N. Y. 386; *Archer* v. *Equitable Life Assurance Society*, 218 id. 18.)

Similar statutes are in force in other jurisdictions and the construction placed thereon by those charged with their enforcement supports the contention of the defendants herein that the transfer of the shares of stock in the case at bar was not subject to a tax. On October 22, 1914, there was approved by the President the Emergency Internal Revenue Law, enacted by Congress, which law provided for a tax " on all sales, or agreements to sell, or memoranda of sales or deliveries or transfers of shares or certificates of stock in any association, company, or corporation * * * *Provided,* That it is not intended by this Act to impose a tax upon an agreement evidencing a deposit of stock certificates as collateral security for money loaned thereon, which stock certificates are not actually sold, nor upon such stock certificates so deposited; * * *." (38 U. S. Stat. at Large, 753, § 5; Id. 759, Schedule A.) The Commissioner of Internal

Revenue ruled thereon that where certificates of stock are deposited as collateral security for the loan of money, such certificates being transferred to the name of the trustee, documentary stamps are not required on account of the transfer of such certificates of stock. The Commissioner, however, held that in case of default in the payment of the loan and foreclosure of the collateral, documentary stamps were required, on account of the transfer, at the rate provided by the statute.

In Massachusetts, by chapter 770 of the Acts of 1914, as amended by chapter 238 of the General Acts of 1915, the Legislature of that State imposed a tax " on all sales or agreements to sell or memoranda of sales or deliveries or transfers of shares or certificates of stock in any domestic or foreign corporation," providing, however, that " it is not intended by this act to impose an excise upon an agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon, which stock certificates are not actually sold, nor upon such stock certificates so deposited; * * *." On December 4 and 12, 1917, the Department of the Tax Commissioner of the Commonwealth of Massachusets ruled that no authority existed under the statute to impose an excise upon such a deposit and transfer.

As before stated, it seems to us that the spirit of the statute was to tax only actual sales and transfers of shares of stock, and that the Legislature in its qualifying clause stating that " it is not intended by this act to impose a tax upon an agreement evidencing the deposit of stock certificates as collateral security for money loaned thereon, which stock certificates are not actually sold, * * * " clearly evidenced an intention not to impose a tax upon transfers of stock made in the form involved upon this submission. By such expression the Legislature left no room for doubt as to its intention.

It seems to me that if the plaintiff herein were granted the judgment which he asks the result would be to place the trust companies of New York State under undue disadvantage with similar institutions in other jurisdictions. There would surely result a loss of business as the result of the imposition of taxes in excess of those imposed under the laws of other

States, and the trust companies of the State of New York should not be compelled to transact their business under such a handicap. Moreover, the imposition of such a tax would penalize the borrower. A tax would be exacted at the time of the transfer of the security, and in case the pledgor was able to satisfy his debt a tax would be required upon the retransfer to him of the stock. The result would be that the burden of the double tax would fall upon the borrower, as the obligee would require the payment of the double tax either at the time the loan was made or at the time of its satisfaction. In the absence of a clear legislative intention to impose the tax for which the Comptroller contends in the case at bar, I do not think we should hold that the transfer of the shares in question was subject to tax.

A further ground for denying the right to impose a tax under said statute lies in the well-established principle that laws relating to taxable transfers must show a clear legislative intention to tax. (*Matter of Saunders,* 77 Misc. Rep. 54; affd., 156 App. Div. 891; affd., 211 N. Y. 541.) A statute levying a tax should be construed most favorably to the taxpayer, the government being entitled to no rights thereunder, *except those clearly given by its language.* (*People ex rel. New York Mail & Newspaper Transportation Co.* v. *Gaus,* 198 N. Y. 250; *People ex rel. Mutual Trust Co.* v. *Miller,* 177 id. 51; *People ex rel. Fifth Avenue B. Co.* v. *Williams,* 198 id. 238; *City of Rochester* v. *Fourteenth Ward Assn.,* 183 id. 23.)

A careful examination of the statute leads me to the conclusion that the Legislature did not intend that transfers of stock under the circumstances of the case presented here were subject to tax.

I am, therefore, of the opinion that judgment should be rendered herein in defendants' favor, with costs.

CLARKE, P. J., DOWLING, SMITH and GREENBAUM, JJ., concur.

Judgment ordered in favor of defendants, with costs. Settle order on notice.