INTERNATIONAL PAPER COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, September 26, 1924.

Corporations — stock transfer tax — claim for tax erroneously paid — deposit agreement by preferred stockholders made for purpose of readjusting finances and payment of accrued dividends on preferred stock — dividends on preferred stock were to be paid partly by issuance of preferred stock and common stock — preferred stock held by stockholders was delivered to committee under agreement and deposited by it with depositary and tax paid thereon — another tax was paid when depositary delivered stock to corporation — corporation issued new certificates for preferred stock deposited with it — committee, under agreement, acted merely as agent of stockholders with limited authority expressed in agreement — stockholders did not part with any interest in stock — neither deposit of stock with depositary nor delivery to corporation amounted to transfer subject to tax under Tax Law, § 270 — said deposit did not vest holders with " beneficial " interest in stock and "the possession or use thereof " under Tax Law, § 270 — agreement was not voting trust.

The transfer taxes paid under section 270 of the Tax Law on the delivery by a stockholders' committee of preferred stock to the depositary named in an agreement and on the delivery of the stock by the depositary to the corporation were erroneously paid and may be recovered back from the State, since it appears that, for the purpose of readjusting the finances of the corporation and the payment of accrued dividends on the preferred stock, an agreement was made whereby the preferred stockholders delivered their certificates to the committee named in the agreement and the committee in turn delivered the stock to the depositary named therein, which delivered it to the corporation, and the corporation issued new certificates of stock in place of those delivered to it, and also, under the terms of the agreement, issued new preferred stock and new common stock in part payment of accrued dividends on the original preferred stock, and since it further appears that the committee named in the agreement was limited in its powers to acting merely as agents and attorneys in fact of the depositors of the stock and under the agreement received no title to the certificates so deposited with it.

The delivery of the certificates to the depositary and the delivery by the depositary to the corporation did not amount to a sale or transfer of the stock within the meaning of section 270 of the Tax Law, since the agreement specifically pro-

23

vided against any such intention and that the certificates deposited should be returned by the depositary upon the surrender by the holders of their respective certificates of deposit, and the mere fact that the corporation issued new certificates in the place of those deposited is not controlling.

The transaction did not vest in the committee or the depositary any "beneficial" interest in the stock nor "the possession or use thereof" within the meaning of section 270 of the Tax Law, since there was no possession or use except of a physical nature which does not come within the intent of the statute, and furthermore, if there is any doubt in this respect, that doubt should be resolved in favor of the taxpayer.

The agreement in question was not a voting trust nor analogous thereto, since it specifically provided that title should not vest in or pass to the committee or the depositary.

HINMAN and KELLOGG, JJ., dissent.

APPEAL by the claimant, International Paper Company, from an order of the Court of Claims, dated the 27th day of December, 1923, dismissing the claim, and also from the judgment entered in the office of the clerk of said court on the 2d day of January, 1924, pursuant to said order.

*Stetson, Jennings, Russell & Davis* [*Havens Grant* and *Morris F. Frey*, of counsel], for the appellant.

*Carl Sherman,* Attorney-General [*Edward G. Griffin,* Deputy Attorney-General, of counsel], for the respondent.

McCANN, J.:

This is a claim for refund of the amount of tax paid for stock transfer stamps which the claimant maintains were erroneously affixed and canceled in connection with a certain agreement for the deposit of stock of the International Paper Company. Two claims were filed with the Comptroller pursuant to the provisions of section 280 of the Tax Law (as added by Laws of 1910, chap. 186),* one in June and one in August, 1917. Both were rejected. Thereafter claimant commenced this action in the Court of Claims to recover the amount advanced by it for such stamps. The action was tried, a judgment of dismissal was entered and this appeal is taken therefrom. The claimant is a New York corporation. Prior to January, 1917, it had outstanding a large issue of six per cent cumulative preferred stock on which accumulated and unpaid dividends were in arrears to the amount of thirty-three and one-half per cent of the par value of such stock then outstanding. There was also a funded indebtedness maturing in the near future. On the 31st day of January, 1917, a plan was suggested by the officers of the company to readjust its finances by creating a refunding mortgage and the payment of the dividends in question, (1) by payment of seven and one-half per cent of the par value thereof in

* Since amd. by Laws of 1921, chap. 443, and Laws of 1922, chap. 354.—[REP.

cash; (2) by issuing preferred stock to the amount of fourteen per cent of the par value; (3) by issuing common stock to the amount of twelve per cent of the par value.

A so-called " deposit agreement " was prepared and the stockholders of the preferred stock were invited to deposit their stock in accordance therewith. Pursuant to the plan adopted and on or about March 21, 1917, the deposit agreement together with 196,478 shares of preferred stock were deposited with the Bankers Trust Company as the depositary named in the agreement and stock transfer stamps to the amount of $3,929.56 were affixed by plaintiff to such agreement and canceled. After the above-mentioned shares had been deposited with the Bankers Trust Company under said agreement and on or about the 31st day of May, 1917, the said trust company turned over and surrendered to the plaintiff the deposit agreement together with the shares of stock that had been deposited with it and said deposit agreement was thereupon taxed again in the same amount which tax was also paid by plaintiff. The certificates of stock were canceled and new certificates for preferred stock were issued to the stockholders according to the amount to which they were entitled respectively. Such new certificates were of the same tenor as the old certificates but across their face a legend was printed to the effect that all accrued dividends had been paid in full. These new certificates were also stamped. These certificates representing the par value of the stock deposited were delivered to the stockholders together with their additional new certificates of preferred stock to the amount of fourteen per cent of the par value of their holdings, common stock to the amount of twelve per cent of their holdings, and also seven and one-half per cent in cash of the par value of their holdings, thus completing the transactions contemplated by the deposit agreement. It thus appears that in order to carry out this transaction in question three taxes were paid — one upon the deposit of the agreement with the trust company on the theory that such agreement was a transfer of the stock; one upon the delivery of the agreement to plaintiff corporation upon the same theory, and one on the new stock on the theory that it was a new issue of stock and was subject to the stamp tax. The claim presented is to recover the sum of $7,859.12, one-half of which was the amount attached to said deposit agreement on March 21, 1917, and one-half of which was attached on or about June 2, 1917.

The " deposit agreement " is too long to set forth in full. It provides, however, for a committee to represent the stockholders for the purpose of carrying into effect the proposal made regarding the liquidation of the dividends and for the execution of a refunding

mortgage, and vests in such committee authority to effectuate the plan. The extent and effect of the authority so granted forms the basis of the contention on this appeal.

The appellant is correct in its claim that neither the deposit of the stock by the holders thereof nor the delivery of the same to the plaintiff for cancellation were transfers that were taxable under the Stock Transfer Law of the State of New York, being section 270 of the Tax Law (added by Laws of 1910, chap. 38, as amd. by Laws of 1913, chap. 779) as in effect in 1917.* In order to hold that these stamps were properly attached, it is necessary to show that the transactions in question came under the provisions of this section. The intent of this statute is to cover such agreements or such transfers as actually convey some interest or title of some nature to some party other than the one who is the actual owner and holder of the stock. The authority given by the stockholders to the committee and to the depositary is specific and covers only such matters as are contained within the agreement itself. Paragraph 2 states that the committee is appointed " to exercise the powers and perform the duties herein set forth." Paragraph 3 specifically designates the committee as the " agents and attorneys in fact on behalf of the depositors and each of them " and specifies particularly and in detail what such committee may do, to wit:

(a) *to approve the said plan* and accept the offer made by the International Paper Company, as hereinbefore recited, for the liquidation of the deferred dividends upon the preferred stock of said company and the terms and conditions expressed in said offer;

(b) *to vote* at any meeting of the stockholders of the company which may be called or any adjournment thereof for the purpose of ratifying and approving said plan or of carrying the same into effect;

(c) *to vote* at any meeting for the authorizing and consenting to the execution of the mortgage in question;

(d) *to vote* at any meeting authorizing and consenting to increase the preferred stock;

(e) to take such measures and to do such acts as they may deem proper or may be advised by counsel are necessary to assist in carrying out the said plan or such part thereof as they may agree upon with the company, and upon such terms as the committee shall deem wise.

The authority of the committee is, therefore, absolutely and positively limited and any discretion which is given to it is within such limitations. Such paragraphs also provide that " if the said offer for adjustment of the deferred dividends on said preferred

---

* Since amd. by Laws of 1922, chap. 354.— [REP.

stock shall be accepted by the holders of such an amount of the preferred stock as in the judgment of the committee and of the Company shall be sufficient, the same shall be consummated and carried out, and the accumulated deferred dividends shall be paid as therein provided. The payment of the said dividends may be made directly to the holders of certificates of deposit or to the committee as their representatives," and furthermore that " the fact that such deferred dividends have been paid in full may be stamped upon the certificates of stock so deposited if the committee and the Company shall deem it necessary to do so." These references show clearly the intent on the part of the stockholders not to part with any interest in their stock or in any certificate. The latter provision quoted shows that it was not intended that new certificates of stock should be issued except for dividends. This leads to an inquiry as to why this was necessary. After the agreement signed by the holders of a sufficient amount of the stock, the corporation could have issued its additional preferred and common stock and paid its cash dividend, and evidenced such payments either by stamping a legend on the face of the original certificates instead of having new certificates printed with the legend printed thereon or independent receipts could have been taken from the various stockholders acknowledging payment in full of all accrued dividends. Paragraph 4 provides that " the committee shall act in respect to said stock solely *as the agents and attorneys in fact of the stockholders, and the deposit of the certificates of said stock shall not be deemed to transfer, assign or vest to or in the committee any title or beneficial interest to or in said certificates or the stock represented thereby.* The said certificates of stock shall remain in the hands of the committee until the consummation of the plan or its termination as herein provided."

The foregoing is sufficient answer to the respondent's claim that there was an intent actual or implied that there should be a transfer of any interest in this stock. The argument of the respondent cannot stand in the face of the language above quoted. A similar intent is shown in paragraph 7 where it reads: " All stock deposited hereunder shall be returned by the depositary upon the surrender by the holders of their respective certificates of deposit " and again in paragraph 8 (referring to the depositary), " it shall act *as the agent of the committee only.*"

Let us consider the testimony as to what was actually done under this agreement. Much of this has already been recited, but in addition it may be said that neither the committee nor the depositary exercised any functions whatsoever beyond those of being the mere custodians of the stock. It also appears that the

committee under this agreement never exercised any of its voting powers. Proxies were subsequently secured from the stockholders individually and were voted by a proxy committee; therefore, the only action taken by the committee was to receive the stock and deposit it with the Bankers Trust Company, which held it in a safety deposit vault. These were mere physical acts. It was delivered by such trust company to the corporation which canceled it and printed and issued new stock with the legend of receipted dividends thereon and delivered the same to the stockholders from whom the original stock came.

It is claimed that if the transaction did not amount to a transfer of the stock, that under the language of section 270 of the Tax Law (as amd. *supra*), it vested the holder with a " beneficial " interest therein and with " the *possession or use thereof*." The appellant argues at length on the distinction between the use of the words " or " and " and " and seeks to substitute in the statute the words " possession *and* use " in place of the words " possession *or* use." The position so taken is tenable although it is not necessary for the construction of the statute. In this case there was no possession or use except of a physical nature. There was no exercise of discretion except within the limitations of the agreement itself. Neither the committee nor the depositary received any beneficial interest. They acted merely as agents under an authority analogous to a power of attorney to do only such things as they were authorized to do and that to be done only when certain conditions existed. It has been asked, " Why did the stockholders deposit their stock with the depositary? " It was a matter of convenience and a practical method of transacting the business and of expressing assent to the plan; also, as stated, to keep the stock safe pending the consummation of the reorganization to insure against its falling into the hands of persons who might interfere with the reorganization. The law intended something more than physical possession and use.

The case of *Travis* v. *American Cities Co.* (192 App. Div. 16) holds that a stock transfer merely for the purpose of being held as collateral is not taxable and contains much argument which is analogous to the facts in the instant case. The opinion reads: " I think, fairly interpreted, the statute was designed to tax actual sales and transfers of stock, and not mere deposits thereof by way of mortgage or as collateral security. * * * As before stated, it seems to us that the spirit of the statute was to tax only actual sales and transfers of shares of stock * * *. A further ground for denying the right to impose a tax under said statute lies in the well-established principle that laws relating to taxable transfers must show a clear legislative intention to tax. * * * A stat-

ute levying a tax should be construed most favorably to the taxpayer, the government being entitled to no rights thereunder, *except those clearly given by its language.*"

If, therefore, the question at issue in this case raises a doubtful question the appellant is entitled to the benefit thereof. The logic of the *Travis Case* (*supra*) is applicable to the arguments in the present case. The case of *Hudson & Manhattan R. R. Co.* v. *State of New York* (227 N. Y. 233) is authority for holding that this tax was improperly imposed. The appellant expresses its willingness to rest upon the analogy between this case and the *Hudson Case* (*supra*). Without reviewing the *Hudson* case at length, it is sufficient to say that the holdings therein sustain the conclusion that this tax was improperly imposed. The facts in the *Hudson* case are analogous to the case at bar. There was also a double delivery without a change of title or without any vesting of a beneficial interest. The court concludes by stating: " As we have already said, that power was not the equivalent of a vesting in them of the legal title to the stock nor did it necessitate, through implication or otherwise, such vesting."

The respondent claims that " the possession or use    *   *   *    for any purpose " is sufficient to require a tax. This argument has already been answered and its absurdity is apparent. Respondent's other point is that the committee had in fact a voting trust even though it did not exhaust its powers. The language of the deposit agreement does not bring it within the statutory definition of a voting trust, nor can its purpose be considered as analogous thereto. In fact the language explicitly refrains from creating a voting trust. The case of *Bonbright* v. *State of New York* (165 App. Div. 640) is cited to sustain the contention of the State. The distinction between that case and the one at bar is this — one is a transfer with an absolute agreement of ownership in the depositary and the other provides in substance as well as specific language that title shall not vest or pass. In the *Bonbright Case* (*supra*) there was an agreement that the depositary should hold the title to the stock for ten years. In the instant case there is a specific provision that no such title, beneficial or otherwise, shall be considered as passing. The judgment appealed from should be reversed and judgment entered in favor of the claimant for the amount of its claim, with interest and costs.

All concur, except HINMAN, J., dissenting, with an opinion, in which H. T. KELLOGG, J., concurs.

HINMAN, J. (dissenting):

I cannot agree that this transaction was a mere deposit and return of stock certificates, or a mere loan of stock. There was a

transfer of stock indorsed in blank. There was a delivery of the stock certificates to the depositary as the agent of the committee. The committee was empowered by the agreement to vote the stock. Not only possession of the stock was lost, but control of it was lost to the stockholder. He was cut off from all interference with the stock for the period of a year unless the plans were carried out sooner or the committee saw fit to terminate the plans sooner. There was more than mere physical possession. There was a transfer in blank with the right of the committee through its agent to hold physical possession during the period set in the agreement. It was more than a power of attorney revocable at will or the delivery of stock to a stenographer to copy or to a messenger to place in a safe deposit box or to a friend for custody. There was not only possession but the right to continued possession under the indorsement in blank and the agreement, the latter containing mutual covenants furnishing consideration and granting potential voting powers even though not actually exercised and providing the committee with the right to exercise individual discretion in furtherance of the agreement and to decide some of the details of the plan without resort to further authority from the stockholder and without the power of interference by the stockholder.

When we consider these facts in connection with the language of the taxing statute (Tax Law, § 270, as in effect in 1917) it seems to be a taxable transfer. The statute expressly states that a transfer of stock is taxable " whether investing the holder with the beneficial interest in or legal title to said stock." The mere recital in the agreement that it " shall not be deemed to transfer, assign or vest to or in the committee any title or beneficial interest to or in said certificates or the stock represented thereby," cannot be utilized to save a tax which the statute expressly creates notwithstanding such an agreement. I think there was a voting trust created and intended. All of the powers granted were not exercised but if the agreement had not been made and the stock transferred to the committee, who can say that the negotiation thus brought about would otherwise have become an accomplished fact? There was " possession " and " use " in the sense of the statute. The power to use created by the transfer and the agreement and the signatures of sufficient stockholders brought about the carrying out of the agreement just as much as though every power delegated to the committee had been exhausted in the effort. If a man with pistol in hand protects himself from harm or otherwise accomplishes his purpose without discharging the weapon, can it be said that the weapon in his possession was of

no use? Its use was in the persuasive power which it exercised. It overcame opposition and produced a result. It was a " possession " and a " use " for a " purpose." That is the most that the statute requires in this case. In fact the statute uses the expression " possession *or* use thereof for any purpose."

I think the judgment should be affirmed, with costs.

KELLOGG, J., concurs.

Order and judgment reversed on the law, and judgment directed in favor of the claimant for the amount of its claim, with interest and costs.