## BETTMAN ex TAX COMM v AMERICAN MISSIONARY ASS'N

Ohio Appeals, 7th Dist, Lake Co

No 216.   Decided Feb 5, 1932

Arthur Krause, Special Counsel, Cleveland and Raymond D. Metzner of Counsel, Cleveland, for Tax Commission.

Ross G. Sweet, Painesville, and Booth, Keating, Pomerene & Boulger, Columbus, for American Missionary Association.

ROBERTS, J.

We think we may most directly approach the real issue in the case and matters complained of as constituting error in this case by referring to the contentions of the Tax Commission as presented in its brief. They are as follows:

1st. That the American Missionary Association is not a public institution of learning as defined in §5334, GC.

2nd. That said Association, with respect to its educational work, is not carrying on said educational work in the State of New York, and that therefore is not "within the State which does not impose, etc."

3rd. That since the said Association may use its funds, and specifically the bequest in the present case, for missionary or religious purposes, at the discretion of its Executive Committee, and the proportion used for educational purposes may be reduced to a minimum, the said institution is not an "institution of learning" as contemplated by §5334 GC.

Proceeding now to a consideration of the first proposition, which reads, as follows: "That the American Missionary Association is not a public institution of learning as defined in §5334 GC": If it is not such an "institution of learning," as is defined in §5334, GC, then, of course, the bequest would not be exempt from taxation. This contention is based upon a construction of the language of this section of the Code, and perhaps a recollection of its terms will necessitate again reading from this section:

"The succession to any property passing to or for the use of the State of Ohio, * * * or public institutions of learning within this state * * *".

Here is recognized an institution of learning within this state as "a public institution";—or "institutions of learning within any state." Now, the word "public" is left out;—"or institutions of learning within any state of the United States which state does not impose an inheritance, estate or transfer tax on property, given, devised or bequeathed by a resident thereof to an institution of learning within this state." That part of the section which provides for this reciprocity does not use the word "public" as preceding an "institution of learning". Then follows, "or to or for the use of an institution for purposes only of public charity," etc. Then we have "charity" defined as "public." Counsel for plaintiff in error construe this section as being applicable to "institutions of learning" referred to under the law of this State as being public institutions of learning because the preceding clause uses the words "public institutions of learning." Perhaps some difficulty might have been encountered in construing this section if the word "public" had been used only once, and might then have been construed as applying to all or both of the other purposes. In view of the fact, however, that the section first provides for "public institu-

tions within the State," and then leaves out the word "public" and simply says "institutions of learning within any state of the United States which does not impose an inheritance, estate or transfer tax," etc.—and then, following that, when the language of this section comes back to other provisions so far as this state is concerned or "to or for the use of an institution for purposes only of public charity," then the word "public" is again inserted; which seems to this court to indicate a purpose to regard a "public institution of learning" in the first instance and of a public charity in the third proposition and omitting the word "public" in the second proposition referring to another state with the apparent intention not to require the institution of learning within the other state to be a public institution. This construction is further encouraged by reason of the fact that this section previous to its amendment provided for public institutions under all three of these propositions, and in amending leaving out the word "public" from the second or middle proposition, it would seem that this omission was the result of a deliberate purpose not to require those institutions to be public institutions. So that our conclusion upon this proposition is as suggested, that the institutions provided for in this section need not be public institutions as contended for by counsel for the plaintiff in error under the first ground specified, which has been read. We do not wish to be understood in taking this position on this proposition that we are holding that The American Missionary Association is not a public institution of learning. And even should the section be properly construed in that manner, the Supreme Court of Ohio, in **Harvard College v State, 106 Oh St,** on page 303, held in effect that Harvard College was a public institution of learning, notwithstanding the fact that it is undisputed that it is supported by private endowment and is not a state institution.

The second proposition stated by plaintiff in error is that "said association, with respect to its educational work, is not carrying on said educational work in the State of New York, and that therefore is not 'within the State which does not impose, etc.'" Our conclusion upon this proposition is briefly this: that the association has its domicile or its situs in the State of New York, and its rights and privileges, its limitations and duties are imposed according to the law of that state, and that it does not necessarily follow because it is incorporated and domiciled in the state of New York that it must carry on its activities in that state, or any considerable part thereof.

As may be perhaps hereafter suggested, the very nature of the organization of this Association, the work which it has attempted and duties which it has assumed logically carries its activities into other states rather than in the state of New York.

The third proposition is,

"That since the said Association may use its funds, and specifically the bequest in the present case, for missionary or religious purposes, at the discretion of its Executive Committee, and the proportion used for educational purposes may be reduced to a minimum, the said institution is not an "institution of learning" as contemplated by §5334, GC."

It is asserted in the agreed statement of facts in this case that 85 per cent of the disbursements of this Association are for educational purposes, or for the establishment and maintaining of institutions of learning, and we are not sure after a consideration of this case that it might not properly have been said that even a greater percentage of its earnings might properly be considered as being devoted to the purposes of education. So far as this last claimed error is concerned we do not think that this is an important matter for consideration now and the question as to what may be the conduct of this institution in the future, as to whether it may be able or may desire under its charter, for the accomplishment of its intended purpose, to reduce its expenditures for educational purposes to a minimum and devote them more exclusively to other purposes, is a proposition which does not require a determination at this time. In the future, if this organization should deviate from the beaten path of its recognized and established duty and shall engage in work which may be considered properly as ultra vires or otherwise wrongful, then proper action may be invoked for the purpose of preventing it from straying from the path of rectitude and duty under the provisions of its charter. We think that it is sufficient to deal with and consider this proposition under present conditions. It was suggested a few months ago that perhaps even more than 85 per cent of its disbursements might be considered as educational in their nature. A few months reflection will suggest the thought that there is going on continually now a wonderful progress and development along educational lines. Compare for a moment the little red schoolhouse of a generation or two ago and the limited education that the youth were able to acquire after being compelled to tramp through a mile or two of mud and snow to the school house,

with the educational advantages and opportunities which are offered to the youth of today, and the scope of what may be considered education, a part of education, is constantly being developed and broadened. To illustrate,—in our public schools under our Ohio system the boys are taught mechanics and acquire skill in structural and mechanical work and a knowledge of industries along those lines, and the girls are taught needlework and other useful industries and vocations. The pupils now are transported to the schools in busses, and yet no one questions but what hauling children to and from school is a part of education and is educational in its nature. Cafeterias or other means of furnishing food to undernourished children who are not otherwise properly provided for, resulting in building up of the bodies so as to make education more available are unquestioned school adjuncts, and the youth in our high schools are subjected to a regular medical and surgical inspection. I recall the fact that in Ashtabula County an examination of all the children within school age by the county nurses developed the fact that over fifty per cent of those children entitled to the privilege of the schools were defective or in need of medical or surgical assistance. Now, what could be more properly within the scope of education than to afford such treatment to these children so that physical and mental defects and imperfections may be removed or lessened to the extent that their minds and bodies be built up so as to make them more susceptible or receptive to that which is more broadly perhaps than heretofore considered as being educational or learning. So that with these developments which are going on all of the time, who can say what may not in the future be educational or a proper function of an educational institution. The activities of this Association are largely devoted to the unfortunate in this country and its territories,—to the negroes, the Indians, the Mexicans, the Porto Ricans, the Chinese. This country has undertaken to assimilate the people of these other races less favored in the past than the people of this country, but in order to do that it is necessary that special attention be given to them that they may be brought up to an intelligent appreciation and perception of the privileges of our civilization; and this work, as suggested before, necessarily and logically carries the activities of this Association into remote states,—into the mountainous regions and other places where education has not fully made its entrance in the past.

A few moments will be devoted to commenting on some authorities along this line.

In the 123 New York Supplement, 443, it is said that the word "educational" as used in this sense is not employed in the narrower or more limited meaning of the word but in its broader sense as the act of developing and cultivating the various physical, intellectual and moral qualities towards the improvement of the body, the mind and the heart.

"A devise of a residuary estate to the City of Yonkers, in trust, to found a trades school under the direction of the board of education and as a part of the school system * * * is a devise to an educational corporation within Tax Law, and is not subject to a transfer tax"—137 New York Supp., 438.

"The Metropolitan Museum of Art, incorporated * * * for the purpose of establishing and maintaining a museum and library of art, of encouraging and developing the study of fine arts, and the application of arts to manufacture and practical life, of advancing the knowledge of kindred subjects, and to that end of furnishing popular instruction and recreation" is said to be an "Educational corporation." 113 New York Supp. 948.

In the Supreme Judicial Court of Massachusetts in the case of Mt. Hermon Boys' School v Town of Gill, it is said:

"Education is a broad and comprehensive term. It has been defined as 'the process of developing and training the powers and capabilities of human beings.' To educate, according to one of Webster's definitions, is 'to prepare and fit for any calling or business, or for activity and usefulness in life.' Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and best sense it relates to them all." 13 NE 354.

Another quoted definition:

"Education includes moral as well as physical instruction. In its broadest sense, the word "Education" comprehends not merely the instruction received at school or college, but the whole course of training, moral, intellectual and physical." Academy v Mezger, 90 N. Y. Supp., 488.

It seems that activities such as to make the people better nourished physically and give a better appreciation of morals, tend to give them ability to acquire a better education and it all tends to lessen crime and immorality to a great extent.

It is sufficient to say in conclusion that it is the opinion of this court that none of

the contentions,—these three propositions which have been asserted by the counsel for the plaintiff in error, are well founded; and therefore we fail to find any reversible error in this case, and the judgment of the Court of Common Pleas is affirmed in its conclusion that this bequest is not subject to the inheritance tax.

FARR and POLLOCK, JJ, concur.