**TAYLOR, ESTATE OF, In Re**

Probate Court, Cuyahoga Co.

No. 246016.

Niman & Buss, Cleveland, for exceptors.

W. H. Middleton, Jr., for Department of Taxation of the State of Ohio.

Perry L. Graham, Asst. Atty. Gen. of the State of Ohio.

## OPINION

By BREWER, J.

This cause came on to be heard on the exceptions of the executors of the last will and testament of Sophia Strong Taylor, deceased, and also on the exceptions of the residuary legatees under said decedent's will.

The exceptions taken by the executors are directed to the appraisement made by the County Auditor of three parcels of land belonging to said estate for the purposes of the inheritance tax, and also to the appraisement of the preferred and common stock of The William Taylor Son & Company; and the exceptions of the residuary legatees are directed to the assessment of the inheritance tax against the successions of several institutions which the exceptors claim are exempt from the tax.

The question of the exemption of these institutions will be discussed first. The institutions for whom exemptions are claimed are China Inland Mission; Board of Foreign Missions of the Presbyterian Church in the United States of America; Board of National Missions of the Presbyterian Church in the United States of America; Trustees of the Presbyterian Board of Publication and Sabbath School Work; National Bible Institute; The American Bible Society; and American Tract Society.

The authority under which the residuary legatees claim exemption from inheritance tax is found in §5334 GC, and the part thereof which is applicable to the case at bar is as follows:

"Sec. 5334. Property passing to state, etc., not subject to tax.—The succession to any property passing to or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning within this state, or institution of learning within any state of the United States which state does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed by a resident thereof to an institution of learning within this state, or to or for the use of an institution for purposes only of public charity, carried on in whole or in substantial part within this state, shall not be subject to the provisions of the preceding sections of this subdivision of this chapter."

It is to be observed that the institutions which may be exempted from the tax are put by the statute into four different classifications:

1. The state of Ohio or municipal corporations or other political subdivisions of the state.

2. Public institutions of learning within this state.

3. Institutions of learning within any state of the United States which state does not impose an inheritance, estate or transfer tax on property given, devised or bequeathed by a resident thereof to an institution of learning within this state.

4. Institutions for purposes only of public charity carried on in whole or in substantial part within the state.

Of these four classes of institutions, two classes only, to-wit, those named in classifications 3 and 4, are involved in the case at bar.

The exceptors have conceded that two of the institutions for which exemptions are claimed, to-wit, China Inland Mission and Board of Foreign Missions of the Presbyterian Church in the United States of America, do not fall within the classifications of exempt institutions as specified in the statute, and the exceptions as to said institutions, will, therefore, be overruled. The test of the taxability of the other four institutions is whether or not they come within the classifications 3 and 4 heretofore mentioned.

In determining whether a gift to a corporation is entitled to exemption, it is a fundamental rule that the charter of the corporation is the proper source of information as to its character.

THE AMERICAN BIBLE SOCIETY
The purpose of The American Bible Society as set forth in the charter is:

"Section 1.—All such persons as now are, or may hereafter become Members of the American Bible Society, formed in the city of New York in the year one thousand eight hundred and sixteen, shall be and are hereby constituted a body corporate, by the name of 'The American Bible Society,' for the pur-

pose of publishing and promoting a general circulating of the Holy Scriptures without note or comment."

The object of The American Bible Society as set forth in its constitution in Article 1 is:

"The sole object shall be to encourage a wider circulation of the Holy Scriptures without note or comment."

The American Bible Society in order to be exempt under the Ohio Statute must be either an institution of learning or an institution for the purposes only of public charity carried on in whole or substantial part within the state.

Any claim that a Society or an Institution organized ·for the purpose of publishing and promoting a general circulating of the Holy Scriptures without note or comment, is an institution of learning, is one that is certainly open to considerable doubt. The idea which the phrase, "institutions of learning," brings to mind is, an institution composed of a group of learned men and women associated together for the purpose of instructing another group of persons. usually young men and women, in the accumulated knowledge, skill and wisdom of mankind. An institution of learning must at least embrace the idea of someone, possessed of knowledge and skill, capable of and in a position to impart such knowledge and skill to others in position to and capable of learning them. An institution whose sole purpose is to publish books and distribute them does not seem to be in any sense of the term, an institution of learning.

In view of the purpose of The American Bible Society, as set forth in ·its charter and constitution, this Court is unable to discern any similarity between it and the American Missionary Society as an institution of learning, cited by counsel for the exceptors. 12 Abs 13. In the opinion of the Court

The American Bible Society is not an institution of learning, within the meaning of the statute. The American Bible Society may have ·some ground for its claim as an institution of public charity. It publishes Bibles and distributes them without consideration of profit. A substantial part of its expenditures is made in the state of Ohio, and it has been held by the Attorney-General of the State that it may be exempted from the tax on the ground that it is an institution for the purposes only of public charity.

The question of the exemption of· The American Bible Society from the tax must, however, be considered from another point of view, Is it an institution for the purposes only of public charity?

The phrase, "for the purposes only of public charity," carries with it the implication that an institution organized for purposes other than public charity would not come within the class of exempted institutions. If we apply the rule that the character of a corporation is determined by its charter, we must conclude that, inasmuch as the purpose of The American Bible Society is to publish and distribute Bibles, it is engaged in the propagation of the Christian Religion, and that it is primarily a religious rather than a charitable institution. Counsel for the exceptors argue that a gift for a religious purpose is a gift for a charitable purpose. They cite authorities in support of this argument. They see no distinction between a religious and a charitable purpose. They ignore the implication of our statute, that the institution to be exempt must be for the purposes only of public charity and for nothing else.

The Court is aware that. in some states churches and church missionary societies have been held exempt. Counsel for exceptors quote the following from 11 Corpus Juris 320:

"Both before and since the enactment of the Statute of 43 Elizabeth it has been and is a general rule that a

gift for a religious purpose is one for a charitable purpose."

Also on page 324 of 11 Corpus Juris:

"The courts have frequently held that gifts to home or foreign missions or to missionary societies, or for missionary purposes are for a charitable purpose."
"Gifts for Sunday School purposes are charitable in nature * * * . Gifts for printing, circulation and distribution of bibles or other religious literature are for a charitable purpose."

But these exemptions have been made under statutes that include religious bodies as well as charitable institutions as exempt from the tax. This is true of the statutes cited by counsel for the exceptors. McKinney's Consolidated Laws of New York, Annotated, Book 59. Section 221 of Article 10 (page 580). It is easy to find definitions of a charitable use so broad that it is not confined to mere almsgiving or to relief of poverty or distress; but which have a signification wide enough to embrace the improvement and promotion and the happiness of men so as to include almost anything that tends to promote the well-doing and well-being of men socially, that is not prohibited by law or public policy. If we were to give such an interpretation to the statute it might be considered as exempting anything that promotes the mental, physical or spiritual welfare of man. Such an interpretation of the Ohio statute would be in the opinion of this Court too broad and too comprehensive. It is hard to believe that the Legislature ever intended to include so much in our statute. Its language is exclusive. This is indicated by the use of the word "only", which is restrictive in meaning.

This is the view taken by the Attorney-General of the state of Ohio in In re Estate of Poe, in which he found that a bequest to a church for general purposes is taxable under the present Inheritance Tax Law. The opinion in this case is rendered by John G. Price, who was then Attorney-General, in answer to a request for an opinion as to whether or not a bequest to a church for general purposes is taxable under the present inheritance tax law. The Attorney-General said:

"In your letter you refer to opinions of former attorneys-general in which the old collateral inheritance tax law was held applicable to bequests of this kind,—that is, it was held that such bequest was not exempt.

As you point out in your communication, the question is not even as doubtful under the present law as it was under the former law on account of the omission of the words "or other exclusively public purposes" from the present inheritance tax law. The decisions which you cite,—**Gerke v Purcell, 25 Oh St 229**, and **Waterson v Halliday, 77 Oh St 150**, are to the point that a church is not a "charitable institution".

It seems clear, therefore, and it is the opinion of this department that a bequest of the kind mentioned by you is taxable under the present inheritance tax law of this state."

A. G. O. 1920 p. 640 Est. of Poe.

On the same theory a bequest to a church for erection of a new building was held to be taxable. **Estate of White, 23 Nisi Prius (NS) 574.**

The opinion of the Attorney-General just quoted is the only interpretation of the section, **5334 GC,** of which the Court is aware. We have a decision, however, interpreting the statute which just preceded the present inheritance tax law and which is referred to by the Attorney-General in his opinion, heretofore mentioned, which has a bearing on the exemption of religious organizations. The decision was rendered by the Court of Appeals of the Fourth District of Ohio in the estate of Jane Poe, and the decision was delivered by Judge Merriman. He said: The sole question presented in this matter is, are bequests to churches subject to the collateral inheritance tax? (Old Law), §5331 GC., provides for the tax, and §5332 makes the following exemptions:

"The provisions of the next preceding section shall not apply to property, or interests in property, transmitted to the state of Ohio under the intestate laws of the state, or embraced in a bequest, devise, transfer or conveyance to, or for the use of the state of Ohio, or to or for the use of a municipal corporation or other political subdivision thereof for exclusively public purposes, or public institutions of learning, or to or for the use of an institution in this state for purpose only of public charity or other exclusively public purposes. The property, or interests in property so transmitted or embraced in such devise, bequest, transfer or conveyance, shall be exempt from all inheritance and other taxes while used exclusively for any of such purposes."

This opinion goes on to say:

"Exemptions from taxation are not favored; the general rule being, that exemptions will never be presumed or implied. There must be some express grant of immunity. Therefore, the statute must be strictly construed.

No doubt the Universalist church does much charity work; but its dispensation of charity is a mere incident to its real mission, which is teaching and preaching the Christian religion.

In **Watterson v Halliday, 77 Oh St 150, 178, 82 NE 962**, it is said:

"* * * the Catholic Church is not an institution of purely public charity. It teaches and practices charity; but that is not its whole mission in the world. Its character is defined by the third and fourth findings made by the circuit court There it is said: 'The Roman Catholic Church is an institution which has for its chief and primary object and purpose the teaching and extending of its recognized form of religious belief and worship into all parts of the world, and was founded to continue the work of Christ on earth, and to teach, govern, sanctify and save all men.'

" 'Charity is included in its teachings, purposes and practices, as subordinate to its spiritual teaching and purpose, but is an essential part of its general scheme of church work " * *'

"So it seems that, instead of * * * being an 'institution of purely public charity,' it is a religious institution primarily. and its charity is subordinate to its spiritual teachings * * *."

While the Universalist Church differs from the Catholic in its creed and general management, yet the object for which it was founded is the same—the teaching of the Christian religion.

It can not be said, therefore, that the Universalist Church is an institution for the purpose only of charity; neither can it be said to be an institution for exclusively public purposes, though undoubtedly the general public would be welcome, yet the church was formed for the purpose of advancing certain religious ideas and the property of the church is used largely for the benefit of its members.

In giving the legislature power to exempt from taxation (Art. 12, p. 2), the makers of the constitution expressly referred to "houses used exclusively for public worship" in contradiction to "institutions of purely public charity and public property used exclusively for any public purpose." The legislature, in exacting the exemption law, also used the words "houses used exclusively for public worship" in contradiction to "houses or halls used exclusively for public purposes." It would thus seem that the makers of the constitution, as well as the legislature, intended to distinguish between church property and property used for exclusively public purposes.

It is our opinion that the Universalist church is not an institution "for the purpose only of public charity or other exclusively public purpose," and that the bequest thereto is subject to the collateral inheritance tax."

This opinion, in the case of, In re Estate of Jane Poe, was rendered as heretofore stated, under the collateral inheritance tax law, which was replaced by our present law. The difference between these two statutes, is, however, very slight; and as pointed out in the

opinion of the Attorney-General, heretofore quoted, the question as to whether or not a church is a charitable institution is not even as doubtful under the present as under the former law.

The Court in the case of Jane Poe laid down a rule which is important in determining the question at issue here. The Court said that exemptions from taxation are not favorable; that exemptions will never be presumed nor implied; that there must be some express grant of immunity; and that, therefore, the statute must be strictly construed. A similar ruling is also laid down in a recent case, **Tax Commission v Paxson, 118 Oh St 36**, decided by the Supreme Court of Ohio, and cited by counsel for the Department of Taxation.

In the cases just discussed, churches were found not to be institutions for purposes only of public charity. If churches do not come within the classification of exempted institutions, then, certainly there cannot be much doubt that The American Bible Society, whose primary purpose, as stated in its charter, is religious, and whose objective is solely the propagation of Christianity, is not an institution for the purposes only of public charity. What has been said in regard to The American Bible Society can be said with equal, if not greater force, in regard to the legatees, the Board of National Missions of the Presbyterian Church of the United States of America, the American Tract Society and the Presbyterian Board of Publication and Sabbath School Work.

## AMERICAN TRACT SOCIETY

The American Tract Society is a corporation organized under the laws of the state of New York. The charter says that the American Tract Society was organized "for the purpose of printing and circulating religious publications." The purpose of the Society is enlarged upon in its constitution. Article 1 of the constitution states the purpose of the Society to be:

"This Society shall be denominated as American Tract Society, the object of which shall be to diffuse a knowledge of our Lord Jesus Christ as the Redeemer of Sinners and to promote the interests of vital godliness and sound morality, by the printing and circulation of religious tracts and other religious publications calculated to receive the approbation of all evangelical Christians."

Mr. Arthur W. Cobbett, Treasurer of the American Tract Society, in an affidavit concerning the amount of the work done by said Society in the State of Ohio, refers to this work as, "missionary work". The American Tract Society as judged by its charter, and its constitution, and the testimony of its Secretary, Mr. Hardy, and its Treasurer, is an institution for the purposes only of promoting religion and as such is beyond the pale of exempted institutions.

## BOARD OF NATIONAL MISSIONS OF THE PRESBYTERIAN CHURCH IN THE UNITED STATES OF AMERICA

The Board of National Missions of the Presbyterian Church in the United States of America is an institution also incorporated in the state of New York. The purposes of this institution as stated in its charter are for the most part as follows:

"The objects and purposes of which (The Board of National Missions of the Presbyterian Church in the United States of America) shall be the extension of Christianity and the Gospel of Christ in all its fullness and His service in all its implications in the United States of America and elsewhere, as the General Assembly of the Presbyterian Church in the United States of America may direct, by establishing and strengthening local churches, evangelism, organization and such special enterprises as may be deemed wise; to

take over, carry on and conduct, as said General Assembly may heretofore have directed or may hereafter direct, the work or any part of the work now or heretofore carried on by the Board of National Missions of the Presbyterian Church in the United States of America."

The Board of National Missions of the Presbyterian Church of the United States of America is a religious body and its purposes as stated in its charter are purely religious. An institution organized for the purposes ██ of extending Christianity and the Gospel of Christ in all its fullness has as its sole and only purpose, the propagation of Christianity; and is not an institution for the purposes only of public charity.

PRESBYTERIAN BOARD OF PUBLICATION AND SABBATH SCHOOL WORK

The Presbyterian Board of Publication and Sabbath School Work is a corporation not for profit organized under the laws of the state of Pennsylvania, and its purposes are to render assistance and support to the needy and deserving Sunday Schools of various Presbyterian Churches in the United States of America. The purpose of the corporation is set forth in an amendment to its charter and is stated as follows:

"The Trustees hereby incorporated and their successors shall have full power to act as Trustee either under will or by gift inter vivos of funds either real or personal the principal or income of which is directed by said will or gift to be used exclusively in rendering assistance and support to needy and deserving Sunday Schools of the various Presbyterian Churches in the United States of America."

This corporation expends its income in the assistance and support of needy and deserving Sunday Schools of the various Presbyterian Churches in the United States and the testimony given in Court was to the effect that the money received by this organization was turned over to the Board of National Missions of the Presbyterian Church of the United States, and that it in turn is distributed to some seven thousand units to churches throughout the country, and that its activity is limited solely to the Presbyterian Church Workers, and that this organization does not directly expend its funds in the state of Ohio. This organization is purely a religious institution and not ██ an institution for the purposes only of public charity, intended by the statute.

NATIONAL BIBLE INSTITUTE

The National Bible Institute is also a corporation organized under the laws of the state of New York. Its purposes as stated in its charter are:

"The promotion of Bible reading and study, the furtherance of Evangelistic effort and the publication and distribution of religious literature."

This institution in its organization seems to differ but little from the organizations of the average college or university. It teaches in addition to the study of the Bible many of the subjects taught in all colleges and universities. Although its purposes are Evangelistic and a propagation of the Christian faith, it is above all an institution of learning. It has a faculty and a student body and its courses of study, which are similar to the courses of study in any college or university, require all the usual time for completion, and it confers degrees upon the students who complete the courses. This institution must be recognized

primarily as an institution of learning, and must, therefore, be considered as exempt from the inheritance tax under the provisions of the statute.